ANNA TINO AND PELLEGRINO TINO, PLAINTIFFS-APPEL-
LANTS, v. ROBERT F. STOUT, DEFENDANT-RESPON-
DENT, AND FRANCES LONG, *ET AL.*, DEFENDANTS.

Argued December 20, 1966—Decided May 8, 1967.

290

Mr. *Richard B. McGlynn* argued the cause for plaintiffs-appellants (*Mr. William E. McGlynn,* attorney for and of counsel).

Mr. *Rodman C. Herman* argued the cause for defendant-respondent (*Messrs. Whiting, Moore, Hunoval & Herman,* attorneys; *Mr. Herman,* of counsel and on the brief).

The opinion of the court was delivered by

SCHETTINO, J. This is a joint tortfeasor contribution case.

On June 26, 1952 plaintiffs instituted this action against defendant Robert F. Stout and defendants Frances and Jack Long for damages as a result of injuries suffered on February 1, 1951 by plaintiff Anna Tino, while she was a pedestrian on Lincoln Avenue, Newark. Defendants' vehicles collided at the intersection of Lincoln and Chester Avenues and one of the vehicles mounted the curb and struck Anna Tino.

On December 29, 1954 the Tinos recovered a total judgment of $8,174.95, plus $83.14 costs, against all defendants.

Stout's total insurance coverage, $5,000, and $83.14 costs were paid to plaintiffs by Stout's insurance company. A warrant of partial satisfaction in the amount of $5,083.14 was issued to the Clerk of the Superior Court, acknowledging receipt of that amount, but leaving unpaid $3,174.95. The warrant on its face did not release Stout from his obligation on the balance of the judgment.

Early in 1959, plaintiffs moved against defendants Frances and Jack Long. An attorney for the Longs indicated that the Longs were without assets and would be required to file a bankruptcy petition to discharge the judgment. The attorney proposed a settlement of $350 to avoid the bankruptcy, which proposal was not accepted by the plaintiffs.

Instead, plaintiffs applied for a wage execution against defendant Long. Long requested a hearing on the wage execution application. At the hearing it was again suggested that the parties attempt to settle the claim against the Longs. As a result, plaintiffs and the Longs settled the judgment against the Longs for $750. On April 21, 1960 plaintiffs executed a warrant of partial satisfaction only insofar as the Longs were concerned. The warrant purported to reduce the amount still owed by Stout to $2,424.95.

The whereabouts of defendant Stout during all of this time is somewhat unclear. It is not apparent from the record whether Stout was deliberately hiding in an attempt to avoid his obligations under the judgment or whether he thought his obligations were taken care of by his insurance company. Several attempts were made by attorneys for the plaintiffs in New York and in New Jersey to locate Stout but all these attempts failed.

In the summer of 1964 defendant Stout returned to the scene by giving notice to all parties that he was moving for an order directing satisfaction of the judgment as to him. After oral argument, defendant Stout's motion was granted.

Plaintiffs appealed and the Appellate Division affirmed, with one judge dissenting. (90 *N. J. Super.* 395 (*App. Div.* 1966)).

The majority opinion in the Appellate Division reasoned that under the decision of *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67 (1954) (*Judson I*), the warrant of partial satisfaction given by plaintiffs to defendants Frances and Jack Long automatically gave defendant Stout the benefit of a *pro rata* reduction and as Stout had already paid more than his *pro rata* share, the judgment was satisfied as to him also. The dissenting judge held that defendant Stout is entitled only to a *pro tanto* credit on the judgment for the amount received by plaintiffs from the Longs. He reasoned that the *Judson I* case is distinguishable because

in *Judson I* the settlement occurred before judgment, whereas here it occurred after judgment.

Plaintiffs do not seek to upset the *pro rata* rule which was adopted in the *Judson I* case.

Plaintiffs argue, however, that in this case defendant Stout is entitled only to a *pro tanto* credit on the judgment for the amount received by plaintiffs from the Longs. Plaintiffs assert that the first warrant of partial satisfaction was an acknowledgment that $5,083.14 had been received by them and authorized the reduction of the judgment to $3,-174.95. The warrant on its face indicates that it was not intended as a full satisfaction of the judgment insofar as defendant Stout was concerned. The pertinent part of the warrant reads as follows:

"AND WHEREAS, Anna Tino and Pellegrino Tino have received a partial satisfaction for the same by the payment to them of the sum of Five Thousand and Eighty-three dollars and Fourteen ($5,083.14) Cents, the receipt whereof is hereby acknowledged; from the said Robert F. Stout:

THESE ARE THEREFORE, to authorize you to reduce the amount of said judgment to $3,174.95, insofar as the same affects the said Robert F. Stout:"

Plaintiffs argue that the second warrant of partial satisfaction given to the Longs by plaintiffs differs from the first. In the second, it is clear that plaintiffs and the Longs intended that the $750 received from the Longs was to be a full satisfaction of the judgment insofar as the Longs and the plaintiffs were concerned. This warrant compromised the full amount due on the judgment to the plaintiffs by the Longs for $750. Thus, the plaintiffs were fully satisfied insofar as the Longs were concerned but not as far as defendant Stout for plaintiffs clearly stated that they were not releasing Stout:

"AND WHEREAS, Anna Tino and Pellegrino Tino have received additional partial satisfaction for the same by the payment to them of the sum of Seven Hundred Fifty ($750.00) Dollars, the receipt whereof is hereby acknowledged; from the said Frances Long and

Jack Long, These are therefore, to desire and authorize you to enter this acknowledgment of satisfaction upon the record of the said judgment, insofar as the said Frances Long and Jack Long are concerned and to reduce the amount of said Judgment to Two Thousand Four Hundred Twenty-four Dollars and Ninety-five cents ($2,424.95) insofar as the same affects the said Robert F. Stout."

Defendant Stout agrees that the original warrant of partial satisfaction issued by plaintiffs, acknowledging receipt of the $5,083.14 received from Stout's insurance company, did not, in itself, absolve Stout from further liability on the judgment. After this warrant was issued Stout admits that plaintiffs could have pursued him for the remainder of the judgment.

Stout, however, argues that by issuing the second warrant of partial satisfaction, which purports to release the Longs completely from liability on the judgment, Stout is thereby absolved from any further liability on the judgment. His argument is necessarily twofold:

(1) Assuming that the second warrant did not amount to a complete release of the Longs but merely an acknowledgment of satisfaction (analogous to the covenant not to sue in a settlement before judgment) insofar as the Longs were concerned, Stout argues that he cannot be held for further liability as a result of the judgment.

Stout reasons that to give this second warrant any substantial meaning it is necessary to construe it as forbidding not only any action by plaintiffs against the Longs but also as forbidding any action for contribution by Stout against the Longs. Plaintiffs and the Longs agreed on a lesser amount ($750) as an acknowledgment of full compensation from the Longs because of the financial irresponsibility of the Longs. Certainly, the Longs would not have paid anything on the judgment unless they felt that they were being completely absolved from all liability to anyone on the judgment.

However, Stout was not a party to this warrant and it cannot bind him in any way. His contribution rights under the Joint Tortfeasors Contribution Act, *N. J. S.* 2A:53A-1

*et seq.*, arise as soon as he has paid more than his *pro rata* share. Any arrangement between the plaintiffs and the Longs cannot affect his statutory rights. In order to completely absolve the Longs, the *pro rata* rule must be invoked so that Stout's contribution rights under the act would never accrue to him.

(2) From this first argument Stout's second argument may be inferred. By accepting partial compensation, here $750, as full satisfaction for their injuries, at least insofar as the Longs were concerned, plaintiffs indicated an intention to release one tortfeasor, and a release of one tortfeasor releases them all. Thus, Stout is also released.

In addition, plaintiffs argue that the *Judson I* case is distinguishable in that the settlement with the Longs occurred after judgment, whereas in *Judson I* the settlement occurred before judgment. Also, the *Judson I* case is distinguishable in that here the settling tortfeasor was insolvent, whereas in *Judson I* all the settlers were solvent.

Stout argues that the *pro rata* rule should be invoked whenever a plaintiff settles with a tortfeasor, whether before or after judgment and whether or not the settling defendant is insolvent.

The early common law did not allocate the burden of fault between joint tortfeasors and treated joint tortfeasors as jointly and severally liable for plaintiff's entire damages. Although plaintiff was limited to one full recovery of his judgment, the common law gave him discretion as to how he should charge it against joint tortfeasors. Plaintiff could sue either tortfeasor separately for the entire amount or, if he sued them jointly, could levy execution on the entire amount against one defendant alone or secure fractions thereof against both. If plaintiff chose to place the burden on one joint tortfeasor, that tortfeasor was helpless to shift any of the responsibility to the more fortunate tortfeasor. See *Judson I, supra,* 17 *N. J.*, at *p.* 87.

This rule had its origin in the case of *Merryweather v. Nixan,* 8 *T. R.* 186, 101 *Eng. Rep.* 1337 (*K. B.* 1799), where

an action was brought for conversion and a joint judgment was obtained against two defendants. Plaintiff levied on one defendant for the entire judgment. This defendant sought "contribution of moiety" from the other on the theory of an implied promise. Lord Kenyon held that he had never heard of such an action and a nonsuit was granted. See *Malinauskas v. Pub. Service Interstate Transp. Co.*, 6 *N. J.* 269, 274 (1951).[1]

■ In addition, it was held in the early common law that the release of one tortfeasor released them all. In *Cocke v. Jennor, Hob.* 66, 80 *Eng. Rep.* 214 (*K. B.* 1614), plaintiff brought an action of trespass against Jennor for breaking his house and beating him. Defendant pleaded that he and Millborne did jointly break the plaintiff's house and beat him, that the plaintiff had released Millborne, and that therefore the court should hold that the release to Millborne discharged defendant. The court so held by reasoning that there can be only one satisfaction of an action, that the plaintiff can choose the best means to be satisfied, and that as plaintiff chose to release Millborne, plaintiff released Jennor.[2]

---

[1] The common-law rule that there could be no contribution among tortfeasors has been persistently attacked by legal scholars and writers, see *Prosser, Torts*, § 47 (*3d ed.* 1964), and in 1952 it was in part superseded in New Jersey by the adoption of the Joint Tortfeasors Contribution Act, *N. J. S.* 2A:53A–1 *et seq.* Those facets of the common-law principle established by the courts and not covered by the Legislature are still the obligations of the courts to re-examine, repeal or re-affirm. *McAndrew v. Mularchuk*, 33 *N. J.* 172, 193 (1960). For example, we note that in *Judson I*, 17 *N. J.*, at *p.* 93, this court pointed out that the statute "contains nothing whatever expressly dealing with the effect of a settlement".

[2] At early common law, a plaintiff could obtain but one judgment on a joint tort. Because the act of one joint tortfeasor was the act of all, it was considered that there was one cause of action which was merged in the judgment. Thus, a judgment against one defendant, even though that defendant be insolvent and even though that judgment went unsatisfied, barred all actions. *Brown v. Wootton, Cro. Jac.* 73, 79 *Eng. Rep.* 62 (*K. B.* 1600). See *Allen & others v. Craig*, 14 *N. J. L.* 102 (*Sup. Ct.* 1833).

Gradually, there was an erosion of the common-law rule that a judgment against one codefendant, even though unsatisfied, barred all actions. It is still felt that a plaintiff is limited to one full sat-

Thus, it developed that regardless of how severe plaintiff's damages were, if he released one defendant even for a very small amount, he was barred from suing other defendants, even though these other defendants were available and quite able to meet their obligations.

Because of the inequity of this situation, in *Lacy v. Kynaston*, 12 *Mod.* 548, 88 *Eng. Rep.* 1510 (*K. B.* 1702), the distinction between a covenant not to sue and a release was developed. The court reasoned that if two defendants are jointly and severally bound to a plaintiff in a sum certain and the plaintiff covenants with one defendant not to sue him, that shall not be considered a release but only a personal covenant because he covenants not to sue the one defendant but does not covenant not to sue the other. See also *Hutton v. Eyre*, 6 *Taunt.* 289, 128 *Eng. Rep.* 1046 (1815 C. P.), and *Duck v. Mayeu*, [1892] 2 *Q. B.* 511 (*C. A.*). See *Breen v. Peck*, 28 *N. J.* 351, 356 (1958).

■ The distinction between a release and a covenant not to sue was criticized very severely primarily on the ground that it does not eliminate injustices to plaintiffs who may not be aware of the choice of a covenant not to sue, rather than a release, if plaintiff intends to preserve rights against other tortfeasors. The distinction has been abandoned in favor of the rule which makes the intention of the parties the determining factor. *Breen v. Peck, supra,* at *p.* 367.

Next, it became necessary to determine what effect the covenant not to sue one defendant had upon the obligation of a codefendant. In *Brandstein v. Ironbound Transportation Co.*, 112 *N. J. L.* 585 (*E. & A.* 1934), decided prior to the adoption of the Joint Tortfeasor Contribution Act, plaintiff sustained injuries in a bus collision. Plaintiff settled with

---

isfaction. But, if a plaintiff recovers a judgment which is unsatisfied, he is not thereby barred from pursing other defendants in order to obtain satisfaction. Only if the judgment is satisfied is plaintiff so barred. See *Theobald v. Kenney's Suburban House, Inc.*, 48 *N. J.* 203, 207 (1966) ; Comment, "The Rights to Contribution and the One Satisfaction Rule: Credit for Settlement by Co-Defendant," 21 *Rutgers L. Rev.* 130 (1966).

one defendant, giving a covenant not to sue. The court held that the consideration received from one defendant operated to reduce *pro tanto* the amount of any damages plaintiff was entitled to recover against the nonsettling defendants. See also *Lombardo v. Creamer*, 113 *N. J. L.* 117 (*E. & A.* 1934); *Gelsmine v. Vignale*, 11 *N. J. Super.* 481 (*App. Div.* 1951).

▇ The adoption of the contribution act brought with it a change in the law regarding the situation of a victim settling with one joint tortfeasor.[3] Two alternative methods were open to treat the situation.

The first alternative, established by the common law prior to the contribution act, is the one proposed by the Uniform Act and *Brandstein v. Ironbound Transportation Co., supra*, 112 *N. J. L.* 585. The injured party may have a judgment for his total damage, less consideration received in settlement with one tortfeasor (a *pro tanto* reduction). The judgment tortfeasor who pays in excess of his *pro rata* share may have his action for contribution against the other defendant who settled. This alternative, while preserving the contri-

---

[3] As already noted, the Joint Tortfeasor Contribution Act was enacted to change the injustice of the common law, which permitted a plaintiff to place the entire burden of fault on one defendant, who was then helpless to shift any of the responsibility to any other joint defendants. The statute was intended to relieve the tortfeasors of an injustice as among themselves. It was not designed to prevent a full recovery by the plaintiff nor was it intended to deny a plaintiff full and complete satisfaction of his claim.

The act gives contribution rights to joint defendants but these rights accrue to a defendant only after he has paid more than his *pro rata* share. The act was never meant to read that a plaintiff must pursue each defendant only for his *pro rata* share. A plaintiff still retains his common-law discretion as to how he should charge codefendants. A plaintiff may still sue either defendant separately for the entire amount of his claim, or sue the defendants jointly and levy execution of the entire amount against either alone or secure fractions thereof against both. All that the act does is to enable a defendant who pays more than his *pro rata* share to shift equal responsibility to a codefendant. The effect of the contribution act was that after the act, not only did a plaintiff have rights against joint defendants, but the joint defendants had rights among themselves. *Judson v. Peoples Bank & Trust Co.*, 25 *N. J.* 17, 38 (1957). See also *Theobald v. Angelos*, 44 *N. J.* 228, 237 (1965).

bution rights of the settling defendant under the act, would discourage settlements in that such settlements would lack finality insofar as a settling defendant was concerned. If a settling defendant remains amenable to contribution on the other defendant''s application, the peace he would buy from plaintiffs might be a delusion. See *Judson v. Peoples Bank & Trust Co.,* 25 *N. J.* 17, 35 (1957) (*Judson II*).

The second alternative was the one adopted in *Judson I.* The injured person is required to credit upon a verdict of a judgment against nonsettling tortfeasors not the consideration received in settlement, but a *pro rata* share of the amount of the verdict. It was thought that the adoption of this rule would encourage defendants to settle, because a settling defendant, under the *pro rata* rule, would no longer be amenable to contribution by the nonsettling defendant. If plaintiff must credit *pro rata* anything received from the settling defendant, contribution rights against the settling defendant under the statute would never accrue to nonsettling defendants. The strong policy of the law favoring out-of-court settlements prevailed upon the *Judson I* court and the *pro rata* rule was adopted. Unfortunately, this *pro rata* rule worked an unwelcome result for the settling plaintiffs, as in most cases the *pro rata* rule reduces the total amount of plaintiff's recovery.

The *Judson II* case was complicated by the insolvency of one of the nonsettling tortfeasors. The question before the court was whether any further loss should be visited upon settling plaintiffs because of the insolvency of one of the defendants.

The *Judson II* case is best illustrated graphically. Plaintiff P sues tortfeasors A, B, C, and D, and settles with A and B for $1,000. Later plaintiff recovers a judgment against C and D for $12,000. D is insolvent. C asserts that as D is insolvent there are three shares of $4,000 each and that under the *pro rata* credit rule of *Judson I,* P has compromised two shares, $8,000, and thus C owes P $4,000. P argues that there are four shares of $3,000 each. P has compromised two

shares, $6,000, and is owed $6,000 by C and D. The burden of collecting from insolvent D should be cast upon C and not upon P. C therefore is subject to pay $6,000 to P. C is left with contribution rights against D. See Note, 12 *Rutgers L. Rev.* 533 (1958).

Simply stated, the question in the *Judson II* case was, "Who bears the loss of the fortuitous circumstance of the insolvency of one of the codefendants?" The court found in *Judson II* that this risk should be placed upon the co-offenders rather than the victim. The thesis of *Judson II* is, thus, favorable to settling plaintiffs as the defendants bear the risk of the insolvency of other defendants.

This case has the elements of both *Judson* cases. There has been a settlement with one defendant, which would seem to invoke the rule of *Judson I,* that the injured person credit not the consideration received in settlement but rather the settling defendant's *pro rata* share.

Similarly, there is the insolvency of one of the tortfeasors. The thesis of *Judson II* is that this loss should be visited upon the other defendants rather than the victim. Thus it is argued that the plaintiff should have his full damages from the nonsettling defendant, less the amount paid by the insolvent defendant (a *pro tanto* reduction), leaving the nonsettling defendant his contribution rights.

█ We are convinced that the interest of justice will be advanced in every case in which plaintiff settles with defendant after judgment, if the plaintiff is permitted an opportunity to avoid the *pro rata* rule. After judgment the amount of defendants' liability has been determined. There is no question but that each defendant is obliged to pay the full amount of the judgment and then bear the burden of obtaining contribution from the other. Considerations of fairness justify a departure from the *pro rata* rule of *Judson I.*

When the insurance carrier covering Stout paid the amount of the policy to the Tinos, the warrant of satisfaction issued by the Tinos did not purport to discharge Stout. In fact, it expressly purported to reduce the amount of the judgment

only insofar as payment was accepted. This warrant left plaintiffs free to pursue either Stout or the Longs. After this payment the record is not thoroughly clear as to why plaintiffs chose to pursue the Longs and why plaintiffs failed in their attempts to locate Stout. Plaintiffs may have felt that the decent thing to do at that juncture would be to collect part of the unpaid balance from the Longs, thus allocating the burden between the tortfeasors as best they could. However, Stout may have felt that the best thing to do would be to make himself hard to find, thus forcing plaintiffs to proceed against the Longs.

At any rate, it is clear that plaintiffs chose to pursue the Longs by wage execution proceedings and ultimately settled with the Longs for $750. Another warrant was issued, but this warrant did not purport to retain rights against the Longs. The warrant specifically reduced the amount of the judgment due to plaintiffs from Stout. Thus, it may not be inferred that Stout was released by the warrant. If Stout is to be released by the second warrant, it is by operation of law, *i. e.*, the *pro rata* credit rule, but it certainly is not by the warrant itself.

The question, thus, is whether plaintiffs, who chose to pursue the Longs when they could have pursued Stout, leaving the chore of collection from the Longs upon Stout, are thereby deprived of the balance of the judgment because of the settlement with the Longs.

The effect of the warrants on the obligations of the parties is determined by what the parties intended by the warrants. *Breen v. Peck, supra.* If it was understood by the Longs and the plaintiffs that the warrant given to the Longs was settling the claim once and for all only against plaintiffs, then plaintiffs should be able to pursue Stout, leaving Stout with contribution rights against the Longs.

This interpretation is the only reasonable one under the facts of this case. Normally, a settling defendant would demand that he be absolved completely from liability to anyone. To absolve completely the settling defendant from liability to

anyone, the parties to the warrant must agree that the amount of the settlement compromises a *pro rata* share of the judgment debt. For, if the plaintiff did not agree to compromise a full *pro rata* share, he could later pursue any nonsettling judgment debtors who, after paying more than their *pro rata* share, would have contribution rights against the settling defendant.

But here, the warrant given to the Longs expressly provided for the reduction of the balance owed on the judgment by Stout rather than for a discharge of Stout. Inferentially, then, the Longs were aware that plaintiffs could at some future date still pursue Stout, for after judgment there is no question but that each judgment debtor is obliged to pay the full amount of the judgment and then bear the burden of obtaining contribution from the other. If plaintiffs pursued Stout and Stout paid the balance of the judgment, his contribution rights would accrue to him. The Longs would then be obliged to pay contribution to Stout. In addition, the Longs may have felt that they would take their chances with Stout because, at the time of the agreement between plaintiffs and the Longs, Stout was nowhere to be found. It is reasonable to conclude that the Longs knew that they were not receiving a *pro rata* credit.

Thus, as it cannot be found that, in the arrangement between the Longs and the plaintiffs, it was intended that the liability of the Longs would be completely terminated as to all parties, including Stout, plaintiffs should not be denied recovery of the unpaid balance from Stout.

Reversed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.