Kenneth B. RONSON and Karen Ronson, Plaintiffs,

v.

DAVID S. TALESNICK, CPA, and Gikow, Bierman & Talesnick, a New Jersey Partnership, Defendants.

No. CIV.A. 97–1024(JAG).

United States District Court, D. New Jersey.

Jan. 19, 1999.

Jay J. Freireich, Poe & Freireich, P.A., Florham Park, NJ, for Plaintiffs.

Gerald T. Ford, Landman Corsi Ballaine & Ford, Newark, NJ, for Defendants.

## OPINION

GREENAWAY, District Judge.

### INTRODUCTION

This matter comes before the Court on several motions: (1) Defendants David S. Talesnick and Gikow, Bierman & Talesnick's ("GBT") motion for summary judgment dismissing Plaintiffs Kenneth B. Ronson and Karen B. Ronson's professional malpractice action; (2) Defendants' motion in the alternative for leave to file a Third–Party Complaint against Joseph Paluscio; and (3) Plaintiffs' cross-motion for summary judgment finding Defendants liable for accounting malpractice. The Court heard oral argument on the motions on December 10, 1998. For the reasons set forth below, Defendants' motion for summary judgment and Plaintiffs' cross-motion for summary judgment are denied. Also, Defendants' motion for leave to file a Third–Party Complaint is denied.

### FACTS

Plaintiff Kenneth B. Ronson held an ownership interest in a New Jersey corporation known as Bard Overseas Corporation ("Bard") from approximately 1968 to 1983. Plaintiff was a resident of New York, but maintained the Bard office in New Jersey. Plaintiff met with GBT, a New Jersey accounting firm, at the Bard office and discussed having GBT perform accounting and tax services for Bard as well as for Plaintiff and his wife personally. GBT agreed and performed such services for Plaintiffs and Bard from 1980 through December 1, 1989. David S. Talesnick, a GBT partner, served as the partner personally responsible for providing services to Plaintiffs. GBT's work for Plaintiffs included the preparation of their tax returns. Morris Pinkowitz and Joseph Paluscio were the GBT accountants who worked on Plaintiffs' tax returns. GBT performed all of their work for Plaintiffs in New Jersey.

From 1980 through 1983, Plaintiffs invested in the following tax advantaged limited partnerships: White Rim Oil & Gas, Pine Coal and Winchester Coal (the "Investments"). During those years, Plaintiffs re-

ported losses on their tax returns resulting from the Investments. Subsequently, GBT determined that the IRS could find that the Investments were not qualifying investments and, as a result, that the IRS may decide not to recognize the losses from the Investments reported on Plaintiffs' tax returns during the years 1980 to 1983.

GBT determined that if the IRS disqualified the reported losses, then the IRS would find that Plaintiffs underpaid their taxes by $91,293 [1] for the period from 1980 to 1983. In mid–1986, Plaintiffs asked GBT how they could stop the accrual of interest on the amount owed to the IRS. In June 1986, GBT sent Plaintiffs a letter recommending that Plaintiffs forward a $91,300 cash bond to the IRS to stop the IRS from accruing further interest on the back taxes that Plaintiffs owed. On June 30, 1986, Plaintiffs posted the recommended $91,300 payment bond with the IRS.

In 1986, GBT also calculated that Plaintiffs had a $60,145 interest liability with the IRS in addition to the $91,293 tax liability arising from their investments.[2] On December 1, 1986, GBT sent Plaintiffs a letter regarding their $60,145 interest liability. The letter provided:

> This letter will confirm our conversation with regard to payments of interest on your pending tax shelter cases. A review of your file indicates that you are an investor in Pine Coal, Winchester Coal and White Rim Oil & Gas, all of which are under examination by the Internal Revenue Service. As a result of their examination, the Internal Revenue Service is proposing disallowances which will substantially increase your tax liabilities in the years 1980 through 1983. The interest on those deficiencies through December 15, 1986 approximates $60,145.
>
> Under the Tax Reform Act of 1986, interest payable to the Internal Revenue Service constitutes other consumer interest

and is subject to the phase out provisions of this new law. Based on that fact, the Internal Revenue Service recently issued pronouncements on how taxpayers, in situations such as yours, i.e.—tax shelter cases and other audits, can make a payment of tax and/or interest in order to avail themselves of a deduction in 1986. Due to the magnitude of the interest and considering your annual income for the past few years, we were not sure whether you would benefit from a payment in 1986. In our conversation you confirmed that your income for 1986 would not be at a level to benefit from the interest payment. Accordingly, you have opted not to make any payments in 1986 with respect to this matter and defer payment to possibly 1987 where only 65% of the interest paid will be deductible as you may obtain a better tax benefit.

Supplemental Decl. Morris Pinkowitz Ex. A. In addition, the letter invited Plaintiffs to contact GBT should they decide to make the interest payment before December 31, 1986. Plaintiffs opted not to make the interest payment in 1986. Furthermore, although Plaintiffs possibly owed an unidentified amount to the State of New York, GBT did not advise Plaintiffs to post a bond with New York because of the small amount owing to the state.[3]

Paluscio resigned from GBT effective December 1, 1989 to start his own accounting firm. As of that date, Paluscio, individually as a solo accountant, began providing accounting services to Plaintiffs, and GBT ceased providing such services. In approximately 1996, the IRS audited Plaintiffs and addressed the amount due in owing issue. The IRS advised Plaintiffs of the continued accrual of interest on the unpaid $60,145 interest liability owed in 1986. Plaintiffs contend that the amount presently owed to the IRS is approximately $235,063.

---

**1.** The $91,293 figure was exclusive of interest and penalties owing to the IRS for the improper deductions.

**2.** The $60,145 interest liability encompassed interest charges on the $91,293 owed to the IRS. That amount was exclusive of IRS penalties.

**3.** Defendants concede that they never advised Plaintiffs to post a cash bond with the State of New York. *See* Supplemental Decl. Morris Pinkowitz at ¶¶ 5, 6.

In this matter, Plaintiffs argue that GBT should have advised them to forward a cash bond to the IRS for $182,323, rather than for $91,300, a difference of $91,023.[4] Plaintiffs seek to recover the interest that the IRS charged them on the $91,023 from 1986 through the present and an as yet determined amount owed to the State of New York.

## DISCUSSION

### I.

■ Defendants seek summary judgment dismissing Plaintiffs' accounting malpractice action. Defendants argue that Plaintiffs cannot establish the damages element in this negligence action because Plaintiffs are not permitted by law to recover interest paid to the IRS as damages. Whether Plaintiffs are permitted to recover interest due and owing to the IRS as damages is a question of state law.[5]

### Choice of Law

■ This action is brought pursuant to the diversity jurisdiction of the Court, 28 U.S.C. § 1332.[6] Therefore, the Court must engage in a choice of law analysis to determine the appropriate state law that governs this action. A federal court exercising its diversity jurisdiction must apply the choice of law rules of the forum state in determining which state's laws should govern a given action. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Because this action was filed in New Jersey, the Court must apply New Jersey choice of law rules. *See id.* New Jersey has adopted the "governmental-interest analysis in choice-of-law decisions." *Veazey v. Doremus*, 103 N.J. 244, 247, 510 A.2d 1187 (1986). "Under that analysis, the determinative law is that of the state. with the greatest interest in governing the particular issue." *Id.* at 248, 510 A.2d 1187.

■ "The first step in the analysis is to determine whether a conflict exists between the law of the interested states." *Id.* "If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Id.* Defendants contend that New York law should govern because that is Plaintiffs' domiciliary state. On the other hand, Plaintiffs argue that New Jersey law controls because New Jersey is the state with the most contacts to the instant action.

■ In this instance, there is no conflict between the laws of New York and New Jersey. Although New York prohibits the recovery of IRS interest as damages in accounting malpractice actions,[7] New Jersey has never addressed the issue. Nevertheless, the Court must determine which state has the greatest governmental interest in having its laws apply to this matter. Based on New Jersey's compelling interest in regulating its licensed accountants and the state's significant contacts with the subject matter of this litigation, this Court concludes that

---

4. There is a dispute between the parties concerning the amount of interest owed in 1986. Defendants contend that they properly calculated the interest liability to be $60,145. Plaintiffs, on the other hand, argue that Defendants' calculations were erroneous and that their interest liability in 1986 was $75,661. Plaintiffs also argue that Defendants erroneously calculated the tax owing in 1986, and that the correct amount was $106,662. For purposes of the present motions, this Court need not decide the correct amounts owed.

5. For purposes of the motion concerning the recovery of interest paid to the IRS, there are no genuine issues as to a material fact. Thus, the issue to be decided on summary judgment is solely a question of law.

6. 28 U.S.C. § 1332 provides in relevant part:

The district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,-000, exclusive of interest and costs, and is between-
(1) citizens of different States.
The Court has jurisdiction over this matter because the Plaintiffs are from New York, Defendants are from New Jersey and the amount in controversy exceeds $75,000.

7. *See Alpert v. Shea Gould Climenko & Casey,* 160 A.D.2d 67, 559 N.Y.S.2d 312, 315 (N.Y.App.Div. 1990) (holding "equities militate in favor of barring recovery of [IRS] interest rather than allowing plaintiffs the windfall of both having used the tax monies for seven years and recovering all interest thereon").

New Jersey has the greater governmental interest in having its substantive law govern this case.

New Jersey has established the New Jersey Board of Certified Public Accountants which regulates the licensing and practice of accountants in the state. *See* N.J. Stat. Ann. § 45:1–1 to –27 (West 1997); N.J. Admin. Code tit. 13, § 29–1.1 to –4.1 (1997). Clearly, New Jersey has a compelling state interest in regulating the practice of its accountants. On the other hand, New York has no interest in regulating the practice of licensed New Jersey accountants. In this matter, the only possible New York state interest would be in protecting its citizens from out-of-state accountants. However, because New York would not allow Plaintiffs to recover IRS interest as damages, the Court finds the notion of protecting its citizens from out-of-state accountants unpersuasive.

Furthermore, the only contact that New York has with this litigation is the fact that Plaintiffs are New York residents. On the other hand, New Jersey has significant contacts with the subject matter of this litigation. Defendants are a New Jersey accountant and a New Jersey accounting firm. Plaintiffs met and hired Defendants to perform work for them in New Jersey. All such work was performed in New Jersey. Any negligent conduct associated with that work occurred in New Jersey. For all intents and purposes, Plaintiffs were New Jersey clients. New Jersey's significant contacts with the subject matter of this litigation are inexorably intertwined with its strong governmental interest in regulating the profession of accounting within the state.

Defendants' contention that New York law should apply relies entirely on the fact that Plaintiffs are New York domiciliaries. Although New Jersey courts have held that New Jersey has no interest in protecting the rights of non-domiciliaries, "[d]omicile is but one factor to be considered in the overall qualitative analysis of the relevant· contacts of the states under consideration." *Performance Motorcars of Westchester, Inc. v. KPMG Peat Marwick*, 274 N.J.Super. 56, 62, 643 A.2d 39 (App.Div.), *certif. denied*, 139 N.J. 183, 652 A.2d 172 (1994).

In light of New Jersey's interest in regulating the accounting profession within its borders and New York's tenuous contacts with the subject matter of the litigation, this Court concludes that New Jersey law will govern the instant dispute.

### Damages

■ This Court must now determine whether New Jersey law allows Plaintiffs to recover IRS interest as damages in this accounting malpractice action. The Supreme Court of New Jersey has not spoken on the issue. Therefore, this Court must determine how the Supreme Court of New Jersey would rule if the issue were before it. *See Gruber v. Owens–Illinois Inc.*, 899 F.2d 1366, 1367 (3d Cir.1990) (noting that, where an issue has not been decided by the state court, a federal court exercising diversity jurisdiction must predict the position the high court of the state would take if the issue were before it).

There appears to be a split among the various jurisdictions concerning whether plaintiffs may recover tax interest as damages in accounting malpractice actions. Some courts have held that plaintiffs may recover tax interest incurred as a result of their accountants' negligence. *See Jobe v. International Ins. Co.*, 933 F.Supp. 844, 860 (D.Ariz.1995) (applying Arizona law in concluding that appropriate measure of damages is the "difference between what the [taxpayers] would have owed if the tax returns had been properly prepared and they owe now because of the professional's negligence, plus incidental damages."), *order withdrawn pursuant to settlement*, 1 F.Supp.2d 1403 (1997); *Dail v. Adamson*, 212 Ill.App.3d 66, 156 Ill. Dec. 445, 570 N.E.2d 1167, 1169 (1991) (same) (quoting *Thomas v. Cleary*, 768 P.2d 1090, 1091–92 n. 5 (Alaska 1989)); *Wynn v. Estate of Holmes*, 815 P.2d 1231 (Okla.Ct. App.1991) (awarding taxpayers amount of interest penalty from estate of their deceased accountant); *Lien v. McGladrey & Pullen*, 509 N.W.2d 421, 426 (S.D.1993) ("measure of damages is the difference between what the taxpayer would have owed absent the negligence, and what they paid because of their accountant's negligence, plus incidental damages").

In contrast, other courts have concluded that tax interest incurred as a result of an accountant's negligence is not recoverable as damages in an accounting malpractice action. *See Eckert Cold Storage, Inc. v. Behl,* 943 F.Supp. 1230, 1235 (E.D.Cal.1996) (applying California law and concluding that "interest is not a proper element of damages" in an accounting malpractice action); *Orsini v. Bratten,* 713 P.2d 791, 794 (Alaska 1986) (holding plaintiffs could not recover interest paid to IRS for under payment of taxes)[8]; *Alpert v. Shea Gould Climenko & Casey,* 160 A.D.2d 67, 559 N.Y.S.2d 312 (N.Y.App.Div. 1990) (barring Plaintiff's recovery of interest paid to IRS); *Leendertsen v. Price Waterhouse,* 81 Wash.App. 762, 916 P.2d 449, 451 (Wash.Ct.App.) (holding "interest paid to the IRS is not recoverable"), *review denied,* 130 Wash.2d 1009, 928 P.2d 412 (1996).

In support of their motion for summary judgment, Defendants rely on several federal cases standing for the proposition that IRS interest is not recoverable as damages. *See DCD Programs, Ltd. v. Leighton,* 90 F.3d 1442, 1451–52 (9th Cir.1996) (holding in securities fraud case that IRS interest was not recoverable damages); *Stone v. Kirk,* 8 F.3d 1079, 1093 (6th Cir.1993) (same); *Freschi v. Grand Coal Venture,* 767 F.2d 1041, 1051 (2d Cir.1985) (same), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986). Although the federal cases that Defendants rely on·were decided pursuant to

federal securities law—Rule 10b–5—the basis for the denial of the recovery of IRS interest was identical to the basis for the denial by state courts in the negligence context.[9] *See DCD Programs,* 90 F.3d at 1451–52.

The courts permitting plaintiffs to recover interest paid to the IRS reason that such recovery is necessary "to place the injured in the position he would have been in but for the negligence of and/or breach of contract by the defendant." *Dail,* 156 Ill.Dec. 445, 570 N.E.2d at 1168. Courts denying the recovery of IRS interest conclude that the plaintiff is not put in a worse position because the interest paid simply is compensation to the IRS for the use of money that the plaintiff would not have had if the money had been paid to the IRS. *See Orsini,* 713 P.2d 791; *Alpert,* 160 A.D.2d 67, 559 N.Y.S.2d 312. Under this analysis, some courts have reasoned that plaintiffs have not been injured and may have even benefitted because they have had the opportunity to invest the money withheld from the IRS at an interest rate higher than the rate charged by the IRS. *See Orsini,* 713 P.2d 791.

Recognizing the split among the various jurisdictions regarding whether IRS interest is recoverable as damages, this Court notes that none of the aforementioned cases, including the federal decisions that Defendants rely on, are controlling in this instance.[10] To

---

**8.** In 1986, the Supreme Court of Alaska definitively decided that a plaintiff could not recover IRS interest as damages in negligence actions. *See Orsini,* 713 P.2d at 794. In 1989, the Supreme Court of Alaska did not revisit whether a plaintiff could recover IRS interest as damages in *Thomas,* 768 P.2d 1090. The Court merely addressed whether the plaintiff's claims in that instance were ripe for adjudication. *See id.* at 1091. In considering whether the plaintiff's claims were ripe, the Court noted that the trial court had employed an erroneous measure of damages, and thus the appellate court had to set forth what the appropriate measure of damages should be. *See id.* at 1092 n. 5. In 1991, relying on the language in *Thomas* setting forth the appropriate measure of damages, the Appellate Court of Illinois concluded that a plaintiff should be entitled to recover IRS interest as damages. *See Dail,* 156 Ill.Dec. 445, 570 N.E.2d at 1169. Although *Dail* relied on language from *Thomas* in reaching its conclusion, it is well settled in

Alaska that IRS interest is not recoverable as damages in negligence actions.

**9.** The state courts denying the recovery of IRS interest in the negligence context reason that plaintiffs are not injured by their accountants' negligence because those plaintiffs have had the use of money that otherwise would have been paid to the IRS. *See infra* p. 353.

**10.** The various state court decisions from·jurisdictions other than New Jersey are not controlling on the issue of New Jersey law for obvious reasons. The federal cases relied on by Defendants are not controlling in this instance because those cases are decided pursuant to federal securities law. Here, this Court is exercising diversity jurisdiction and must decide how the Supreme Court of New Jersey would rule if the case were before it. As such, the cases decided pursuant to federal law do not govern the law of New Jersey, and thus, are not controlling on this Court seeking to determine New Jersey law.

the extent that those cases hold that IRS interest is not recoverable, this Court elects not to follow them. For the reasons set forth below, this Court finds that the Supreme Court of New Jersey would follow those precedents that allow for the recovery of IRS interest in accounting malpractice actions.

There are several damages principles that courts consider in the analysis of the recoverability of IRS interest. Those principles are the collateral source rule and the benefits rule. New Jersey has adopted both the collateral source rule and the benefits rule.

■ Under the collateral source rule, "it has long been the law in New Jersey that a tortfeasor may not benefit because of payments to or for the injured party from a collateral source." *Bandel v. Friedrich*, 235 N.J.Super. 384, 391, 562 A.2d 813 (App.Div. 1989). Public policy dictates that a tortfeasor should not benefit from the generosity of a third party or the ingenuity of the plaintiff. However, New Jersey also has a strong public policy against permitting double recoveries. *See Adams v. Cooper Hospital*, 295 N.J.Super. 5, 12, 684 A.2d 506 (App.Div. 1996). In furtherance of that policy, the state has enacted the collateral source statute. *See* N.J. Stat. Ann. § 2A:15–97 (West 1997). The collateral source statute permits the court to deduct any duplicative award from a plaintiff's recovery.[11] *See id.* The collateral source statute, however, is expressly limited in applicability to a "civil action for personal injury or death." [12] *Id.*

■ The benefits rule provides: "When the Defendant's tortious conduct has caused

harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." Restatement (Second) of Torts § 920 (1979). Comment a to Section 920 provides that the rule "normally requires that the damages allowable for an interference with a particular interest be diminished by the amount to which the same interest has been benefitted by the Defendant's conduct." New Jersey courts have acknowledged that "where a wrong creates a benefit that would not have existed but for the wrong, the damages flowing from the wrong are offset to the extent of the benefit received." *Gracia v. Meiselman, D.D.S.*, 220 N.J.Super. 317, 325, 531 A.2d 1373 (Law Div.1987). The benefits rule has been applied in New Jersey to medical malpractice actions to reduce "the damages assessed where the doctor has deviated from the standard of care in treatment of a patient." *Id.*

Reconciling the collateral source rule and the benefits rule in New Jersey, this Court concludes that New Jersey would permit recovery of IRS interest as damages in accounting malpractice actions. Construing those rules together reflects the principle that a harmed plaintiff is permitted to recover for the wrongdoing of a tortfeasor, but that the plaintiff's recovery should be reduced by any benefits received from the wrongdoers' actions. This is the only reasonable interpretation that furthers the overriding tort damages principle of restoring the plaintiff to the position he or she would have been but for the actions of the tortfeasor.

11. The collateral source statute provides:
In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of [N.J.S.A. 39:6A–1 et seq.], if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy

period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.
N.J. Stat. Ann. § 2A:15–97.

12. Although the collateral source statute is restricted to civil actions for personal injury or death and, therefore, not applicable to this matter, the statute reflects the principle that an injured plaintiff should be able to recover from a tortfeasor despite other compensation. The statute, however, permits the court to reduce such recovery by any amount that would otherwise constitute a double recovery by the plaintiff.

A blanket prohibition against the recovery of IRS interest under the circumstances presented is not reconcilable with one of the underlying policies of the collateral source rule that a tortfeasor should not benefit from the ingenuity of a harmed plaintiff. Denying recovery of IRS interest from a negligent accountant permits the tortfeasor to benefit from the presumption that a harmed taxpayer has been or should have been ingenious enough to (1) maintain a sum of money that he would have otherwise had to pay over to the IRS and (2) invest that money in a manner in which he earned interest in an amount comparable to the interest rate charged by the IRS.

Furthermore, such a blanket prohibition would be inequitable under circumstances such as those presented here. In this case, Plaintiffs desired to prevent the accrual of further interest, but Defendants' alleged negligence permitted the interest to continue to accrue. Thus, the Court is not presented with a situation where Plaintiffs merely are repaying the IRS for a debt that they would have been responsible for despite their accountant's negligence. Instead, Plaintiffs incurred further debt that would have been avoided completely but for their accountant's negligence.[13]

This issue presents the ideal situation for the application of the benefits rule. There could be situations in which a harmed plaintiff invests the money owed to the IRS and earns an amount of interest in excess of that charged by the IRS. In such a situation, but for the accountant's negligence, the plaintiff would not have had the money to invest.

Thus, because the benefit was derived from the defendant's negligence, the defendant should be allowed to offer to the Court proof of benefit to the plaintiff.

Although the Court concludes that New Jersey would permit the recovery of IRS interest as damages in accounting malpractice actions; defendants should be permitted to come forward with evidence of benefit from the malpractice that could be applied to reduce a plaintiff's recovery.[14] This conclusion properly balances the public policy of preventing injured plaintiffs from recovering a windfall and the public policy against permitting tortfeasors to escape liability deriving from their tortious actions.[15]

The precedent set in New Jersey regarding accounting malpractice liability lends specific support to this Court's conclusion. On the issue of accountants' liability to third parties, the New Jersey Supreme Court had adopted and had adhered to the minority rule—that accountants would be liable to those that they should reasonably foresee as recipients of their work. *See H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 352, 461 A.2d 138 (1983). While the majority of jurisdictions applied a privity rule to limit the liability of accountants to third parties, the New Jersey Supreme Court adhered to the foreseeability rule because it served the public interest by improving the integrity of the accountant's work. *See id.* at 346–47, 351–52, 461 A.2d 138. The New Jersey Legislature eventually abrogated the foreseeability doctrine adopted by the courts by enacting N.J. Stat. Ann.

---

**13.** *See Eckert*, 943 F.Supp. at 1234 (noting that although IRS interest and back taxes generally are not recoverable as damages, where an accountant causes a taxpayer to incur tax liability that could have been avoided because of a failure to properly advise, the taxpayer should be awarded those taxes as damages); *see also Vogt v. Abish*, 663 F.Supp. 321 (S.D.N.Y.1987) (accountant liable for taxes where accountant failed to inform taxpayer properly of ability to shelter income to avoid taxes).

**14.** In *Lien*, the Supreme Court of South Dakota, while permitting plaintiffs to recover additional taxes incurred as a result of the defendant accountant's negligence, held that "[j]ust as [plaintiff's] expert was permitted to testify regarding the damages incurred as a result of the negligent

advice, so must [defendant] be allowed to elicit testimony discrediting [plaintiff's] computations and demonstrating the benefits which [plaintiff] received." 509 N.W.2d at 426.

**15.** *See Kiss v. Jacob*, 268 N.J.Super. 235, 248–49, 633 A.2d 544 (App.Div.1993), *rev'd on other grounds*, 138 N.J. 278, 650 A.2d 336 (1994) (noting that "[t]he rationale of the collateral source is that, if a choice is presented between overcompensating an injured party to the extent of receipt of collateral source benefits or allowing a culpable party, otherwise responsible for the injury, to reap the benefit of the collateral source and avoid personal responsibility for his/her tortious actions, the innocent injured party should receive the benefit").

§ 2A:53A–25 (West 1995),[16] which adopts a privity rule limiting accountants' liability to third parties.

The New Jersey Supreme Court's adherence to the more liberal approach concerning accountants' liability to third parties leads this Court to conclude that the New Jersey Supreme Court would adopt a liberal approach with respect to the recovery of IRS interest. Such a rule would serve the public interest because it would encourage accountants to "exercise greater care leading to greater diligence" in the performance of professional services. *Id.* at 351, 461 A.2d 138. "In the final analysis the injured party should recover damages due to an [accountant's] negligence from that [accountant]." *Id.* A proscription against such recovery is not in line with the New Jersey Supreme Court's policy of compensating an innocent party for damage caused by a tortfeasor. As noted above, however, the tortfeasor should be permitted to come forward with evidence that the innocent party received some benefit from the tortfeasor's wrongdoing to avoid any possible windfall. Of course, the issue of damages, benefit and windfall need not be addressed by this Court but rather should wait for the fact finders' consideration.

### Third–Party Complaint

Defendants seek leave of court to file a third-party complaint against Joseph Paluscio. Defendants argue that Paluscio is responsible for any interest accruing from 1989 to present because he left the accounting firm in 1989 and became Plaintiffs' personal accountant. Defendants allege that, at that time, Paluscio should have alerted Plaintiffs to the accrual of the IRS interest and resolved any problem concerning that interest for Plaintiffs.

Defendants right to file a third-party complaint against Paluscio is governed by Federal Rules of Civil Procedure 14(a). It provides:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. *Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.*

Fed.R.Civ.P. 14(a) (emphasis added). The decision to grant leave to file a third-party complaint rests within the discretion of the court. *See Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 439 (3d Cir.1971), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 748 F.Supp. 1057, 1068 (D.Del.1990). In deciding whether to permit impleader, the court must consider (1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; and (4) prejudice to the original plaintiff. *See Erkins v. Case Power & Equip. Co.*, 164 F.R.D. 31, 32 (D.N.J.1995); *Con–Tech Sales Defined Benefit Trust v. Cockerham,* 715 F.Supp. 701, 703 (E.D.Pa.1989).

A third-party plaintiff's claim must present a theory upon which the third-party defendant can be liable to the third-

---

16. N.J. Stat. Ann. § 2A:53A–25 provides in pertinent part:

b. Notwithstanding the provisions of any other law, no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless:

(1) The claimant against the accountant was the accountant's client; or

(2) The accountant:

(a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;

(b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and

(c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service.

party plaintiff under some theory of secondary liability, i.e., indemnification, contribution, or some other theory of derivative liability recognized by relevant substantive law. *See Toberman v. Copas,* 800 F.Supp. 1239, 1242 (M.D.Pa.1992); *see also Erkins,* 164 F.R.D. at 33 (noting "the basis of third-party liability is generally either contribution or indemnity"). A third-party plaintiff may not present a claim of the third-party's liability to the original plaintiff. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 368 n. 3, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Toberman,* 800 F.Supp. at 1242. A third-party complaint that does not make a facial showing of secondary liability will not be entertained by the court. *See id.*

Defendants seek contribution and common-law indemnification from Paluscio for the IRS interest which accrued on Plaintiff's indebtedness after December 1, 1989. The Court must determine whether Defendants would be entitled to contribution or common-law indemnification from Paluscio under New Jersey law.

 The New Jersey Joint Tortfeasors Contribution Act provides a right of contribution when the "injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors." [17] N.J. Stat. Ann. § 2A:53A–3 (West 1997). Pursuant to the act, a joint tortfeasor is permitted to recover contribution from another tortfeasor for the excess paid over his pro rata share in satisfaction of a judgment. *See id.* A joint tortfeasor is defined by the statute as "two or more persons jointly or severally liable in tort for the same injury to person or property." N.J. Stat. Ann. § 2A:53A–1. In this instance, Defendants do not seek to join Paluscio for his

involvement in Defendants' work on Plaintiffs' tax returns. Instead, Defendants argue that Paluscio's knowledge and his status as Plaintiff's accountant after 1989 give Defendants a contribution claim for any liability imposed on them for IRS interest accrued after 1989.

In this action, Plaintiffs seek recovery from Defendants of all IRS interest accrued from 1986 to the present. Should Defendants be adjudged liable for the total amount of IRS interest, it is reasonable to conclude that they may have a contribution claim against Paluscio for the amount of IRS interest accrued after 1989. Paluscio's knowledge, former relationship with the accounting firm and obligation to Plaintiffs as their accountant may have imposed a duty upon him to advise Plaintiffs of the continuing accrual of IRS interest. Paluscio's breach of that duty could subject him to liability for the accrual of IRS interest resulting from his negligence after December 1989. As such, Defendants could assert a claim for contribution for the excess paid over their pro rata share in satisfaction of a possible judgment.

 On the other hand, common law indemnification is available under New Jersey law to a person who is not at fault, but has become responsible in tort for the conduct of another. *See Adler's Quality Bakery, Inc. v. Gaseteria,* 32 N.J. 55, 59–60, 159 A.2d 97 (1960); Restatement, Restitution § 96 (1937). "It is settled that indemnity may not ordinarily be obtained by a party who has been at fault." *Cartel Capital Corp. v. Fireco of New Jersey,* 81 N.J. 548, 566, 410 A.2d 674 (1980). If Defendants joined Paluscio in this action, and they were found to be joint tortfeasors, Defendants would not be able to seek indemnification from Paluscio.[18] Thus,

**17.** "The common-law rule that there could be no contribution among tortfeasors ... was in part superseded in New Jersey by the adoption of the Joint Tortfeasors Contribution Act, N.J.S. 2A:53A—et seq., N.J.S.A." *Tino v. Stout,* 49 N.J. 289, 296 n. 1, 229 A.2d 793 (1967). "[T]he Joint Tortfeasor Contribution Act was enacted to change the injustice of the common law, which permitted a plaintiff to place the entire burden of fault on one defendant, who was then helpless to shift any of the responsibility to any other joint defendants." *Id.* at 298 n. 3, 229 A.2d 793. "All that the act does is to enable a defendant who

pays more than his Pro rata share to shift equal responsibility to a codefendant." *Id.* "It is common liability at the time of the accrual of plaintiff's cause of action which is the Sine qua non of defendant's contribution right." *Markey v. Skog,* 129 N.J.Super. 192, 200, 322 A.2d 513 (Law Div.1974).

**18.** Where a plaintiff's injury is proximately caused by the negligence of joint tortfeasors, such tortfeasors would be "entitled merely to contribution from [each other] under the Joint Tortfeasors Contribution Law, ... but not to full

indemnification is not a viable basis upon which Defendants can file a third-party complaint against Paluscio.

 Next, this Court, considering the equitable factors set forth above, must determine whether Defendants should be permitted to file a third-party complaint for contribution against Paluscio. This Court holds that Defendants are not permitted to file a third-party complaint against Paluscio. First, Defendants impleader motion is not timely because it was not filed until approximately one year after Defendants filed their Answer.[19] Second, potential delay to the proceedings would likely be six months or more because of the time requirements necessary to implead Paluscio at this stage of the litigation. This type of delay given the nature of this case is substantial. Third, the issues at trial would not be unduly complicated by joinder. Finally, Plaintiffs would not be prejudiced by joinder because they have been fully aware of the circumstances concerning Paluscio's involvement from the commencement of the litigation. Although two of the four equitable factors would favor granting leave, the untimeliness of the motion and the concomitant delay outweigh the other two factors. Defendants were well aware of Paluscio's involvement from the outset of this litigation. As such, they should have moved to file their third-party complaint before the completion of discovery.[20]

For the reasons set forth, this Court denies Defendants' motion for leave to file a third-party complaint against Paluscio.

## II.

Plaintiffs seek summary judgment on the issue of Defendants' liability. Plaintiffs argue that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law holding Defendants

liable for accounting malpractice. Defendants argue that there are genuine issues of material fact which preclude summary judgment because Plaintiffs were well aware of their interest liability to the IRS in 1986.

### Accounting Malpractice

 "One who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession in good standing in similar communities." *Levine v. Wiss & Co.*, 97 N.J. 242, 246, 478 A.2d 397 (1984) (citing Restatement (Second) of Torts § 299A (1965)). "[A]n accountant may be held responsible to those to whom a duty is owed, for failure to adhere to the standards of the profession." *Levine*, 97 N.J. at 246, 478 A.2d 397. To prevail on the issue of liability in this motion for summary judgment, Plaintiff must demonstrate that Defendants failed to adhere to the standards of the accounting profession. This Court concludes that summary judgment is improper in this instance because there are genuine issues of material fact regarding whether Defendants breached the duty of care owed to Plaintiffs.

It is clear that as professional accountants, Defendants owed a duty to Plaintiffs to adhere to the standards of the accounting profession. However, it is not clear that Defendants breached that duty. Although Plaintiffs argue that Defendants failed to advise them that the outstanding interest that they owed to the IRS would continue to accrue interest, Defendants have submitted a letter in which they stated an understanding that Plaintiffs had agreed to defer payment of the outstanding IRS interest. Construing all reasonable inferences in Defendants', the non-movants, favor on this motion for summary judgment, a reasonable fact finder could conclude that Plaintiffs were aware of their interest liability and

indemnification." *Bree v. Jalbert*, 87 N.J.Super. 452, 460, 209 A.2d 836 (Law Div.1965), *aff'd*, 91 N.J.Super. 38, 219 A.2d 178 (App.Div.1966) (citing *Mayer v. Fairlawn Jewish Center*, 38 N.J. 549, 563, 186 A.2d 274 (1962)).

**19.** Defendants filed their Answer on May 19, 1997, and filed their notice of motion on May 27, 1998. The facts necessary to determine whether

impleader should be employed as a practical matter were known upon the filing of the Answer; particularly, given Paluscio's former relationship with GBT.

**20.** The Scheduling Order was filed on August 8, 1997, setting a discovery cutoff date of May 15, 1998.

decided to defer payment notwithstanding the fact that the debt would continue to accrue interest. Defendants have at least raised a factual question whether Plaintiffs were aware of their interest liability and, therefore, whether Defendants exercised the skill of an accountant in good standing in the profession.[21]

Finally, in their attempt to establish Defendants' liability, Plaintiffs argue that they need not provide expert testimony to establish the applicable standard of care that Defendants owed. Plaintiffs' arguments with respect to the necessity of expert testimony are moot for purposes of this motion because the Court denies summary judgment on other grounds.

## CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment and for leave to file a third-party complaint against Paluscio are denied. Likewise, Plaintiffs' cross-motion for summary judgment on the issue of liability is denied.

**21.** At oral argument in support of their motion for summary judgment, Plaintiffs offered the June 1986 letter from Defendants which appeared to establish that Defendants failed to advise Plaintiffs of the correct amount of the bond that they needed to post with the IRS to stop the accrual of interest on their outstanding debt. However, because the June 1986 letter did not appear in the record before the Court and there was no statement in the record attesting to (1) the existence of the 1986 letter or (2) the authenticity of the letter offered by Plaintiffs, this Court refused to consider the letter in deciding this motion for summary judgment.