ADAMS STATE BANK, A NEBRASKA BANKING CORPORATION, APPELLEE, V. NAVISTAR FINANCIAL CORPORATION, FORMERLY KNOWN AS INTERNATIONAL HARVESTER CREDIT CORPORATION, A DELAWARE CORPORATION, APPELLANT.

426 N.W.2d 525

Filed July 29, 1988.   No. 86-982.

Michael G. Helms, of Schmid, Mooney & Frederick, P.C., for appellant.

James G. Sharp, of Everson, Wullschleger, Sutter, Sharp, Korslund & Willet, for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WARREN, D.J.

WHITE, J.

This is an action brought by plaintiff-appellee, Adams State Bank (bank), against defendant-appellant, Navistar Financial Corporation (Navistar), to recover damages in the amount of $86,676.33 alleged to have been sustained as a result of Navistar's failure to dispose of certain collateral in a commercially reasonable manner. See Neb. U.C.C. §§ 9-504(1) and 9-507(1) (Reissue 1980). The parties stipulated that Navistar (then known as International Harvester Credit

Corporation) held a perfected first lien and the bank held a perfected second lien upon certain assets owned by Adams Implement, Inc.

From 1982 until late 1984, Dennis Hestermann operated Adams Implement, Inc., an International Harvester dealership in Adams, Nebraska. In early November 1984, Hestermann closed the business and voluntarily turned over possession of the new and used equipment and parts inventory to the bank. The bank then turned the property over to Navistar on November 20, 1984.

International Harvester Company (IHC) agreed to buy the new equipment and parts inventory from Navistar pursuant to the sales and service agreement between IHC and Adams Implement. IHC paid dealer cost for those items, less any shortages for missing parts. Navistar received $1,794,573.72 for the new equipment and $178,542.55 for the parts inventory. The used equipment was sold both by private sale to other dealers and by public auction, for a total of $178,400. Navistar also collected $41,270.71 from accounts receivable which had been assigned to it by Adams Implement. After the disposition of all of the collateral, Adams Implement was still indebted to Navistar in the amount of $52,746.96.

Max Gramann, vice president of the bank, was the sole witness to testify for the bank. Gramann was experienced in the farm implement business, having been a part owner of Adams Implement before selling it to Hestermann. Based upon an inspection of the property and certain documents, he valued the new equipment at $2,140,817, the used equipment at $314,857, and the parts inventory at $255,598. The bank did not contest the amount Navistar received for accounts receivable. At the time of trial Adams Implement owed the bank $86,676.33.

At trial the bank did not assert that the amounts actually received for the various property were commercially unreasonable; rather, the bank complained that Navistar did not exercise proper control over the property during the time when it was in possession. The bank contends that this caused shortages which left a substantial amount of property unaccounted for. According to the bank, if all of the property had been accounted for, Navistar would have received a surplus

large enough to cover Adams Implement's debt with the bank. The jury apparently agreed, awarding the bank the amount prayed for in its amended petition.

Navistar attempted to introduce evidence that Adams Implement had agreed to guarantee certain retail financing provided by Navistar to customers of Adams Implement. This evidence was excluded from consideration by the jury.

On appeal, Navistar contends that the district court erred (1) in denying Navistar's motions to dismiss, for directed verdict, and for judgment notwithstanding the verdict; and (2) in refusing to permit Navistar to introduce evidence with respect to the amount of financing guaranteed by Adams Implement and secured by the collateral.

The burden of proof as to the commercial reasonableness of a sale is placed upon the secured party conducting the sale where the secured party is seeking a deficiency judgment. *First Nat. Bank of Bellevue v. Rose*, 188 Neb. 362, 196 N.W.2d 507 (1972); §§ 9-504(1) and 9-507. However, where, as here, a party is proceeding against the secured party to recover its loss caused by the secured party's failure to dispose of collateral in a commercially reasonable manner under the Uniform Commercial Code, the burden of proof as to commercial reasonableness is on the party seeking to recover such a loss. *First Nat. Bank & Tr. Co. of Enid v. Holston*, 559 P.2d 440 (Okla. 1976). See, also, *Transport Equipment Co. v. Guaranty State Bank*, 518 F.2d 377 (10th Cir. 1975); *Vic Hansen & Sons, Inc. v. Crowley*, 57 Wis. 2d 106, 203 N.W.2d 728 (1973).

In this case it was necessary for the bank to prove that not all of the property which it turned over to Navistar was accounted for in the subsequent sales to IHC, other dealers, and auction bidders. Gramann testified for the bank that the value of the new equipment at the time the bank was in possession was $2,140,817. Dale Ball, district manager for Navistar, admitted that there were parts missing from the new equipment, for which IHC did not give credit. Navistar asserts, however, that the bank failed to prove that these shortages were attributable to Navistar. We agree. On cross-examination, Gramann testified concerning the procedure he followed in valuing the new equipment:

Q. Just one other thing I think that I need to clear up. When you inspected the new machines and testified as to the value of those, did you inspect each machine to determine whether or not it was short any equipment?

A. Yes.

Q. Okay. And did you determine whether or not there were shortages?

A. I just ---

Q. Were there?

A. What I did was count the machine that was there. I didn't look for shortages.

It is apparent that the shortages could have existed at the time the new equipment was turned over to the bank and that the bank failed to prove otherwise. There is simply no evidence that Navistar was responsible for the shortages on the new equipment.

Gramann testified that the value of the used equipment at the time the bank turned it over to Navistar was $314,857. Upon cross-examination, however, Gramann admitted that his estimation was based in part on used equipment not owned by Adams Implement. Gramann's testimony concerning the value of the used equipment was meaningless, absent knowledge of how much of the used equipment was actually owned by Adams Implement. The bank failed to meet its burden of proof with respect to the used equipment.

Gramann's estimation of the value of the parts inventory was based upon a spot check of approximately 10 percent of the parts. Gramann testified that he did not find a significant number of parts missing, so he based the value of the parts on the amount shown on Adams Implement's computer accounting records, which was $255,598. Ball testified for Navistar that IHC gave credit for every part actually delivered and that there were no parts for which Navistar was not paid. Neither party introduced the records of parts inventory upon which it relied.

The bank's evidence that there were no parts shortages, together with the fact that Navistar received less than the amount the bank claimed was shown as due by the records, presented an issue for the jury to resolve.

Navistar's remaining assignment is that the district court erred in excluding from evidence the documents and testimony showing the nature and amount of guaranty agreements between Adams Implement and itself covering retail financing extended by Navistar to customers of Adams Implement. In its offer of proof Navistar asserted that Adams Implement guaranteed notes in the amount of $379,180.

Navistar contends that the amount of the notes guaranteed by Adams Implement should have been added to the calculation of indebtedness. We note that the code drafters did not attempt to define the word "indebtedness" used in § 9-504(2). It seems obvious, however, that an amount not yet due from the primary obligor should not be considered as an amount due and owing from the guarantor under this section. Generally, there can be no claim under a guaranty agreement until the primary obligor is in default. *Central Investment Co. v. Miles*, 56 Neb. 272, 76 N.W. 566 (1898). At most, Navistar may have a claim against Adams Implement for anticipatory breach of the guaranty agreements, assuming damages could be shown. Any other result would allow Navistar to collect twice on the guaranteed notes—once against the guarantor and once against the primary obligor. Navistar's second assignment is without merit.

As previously discussed, the bank failed to meet its burden of proof with respect to the new and used equipment, but successfully presented the issue of damages with respect to the parts inventory. We cannot assume from the record, however, that the jury found in favor of the bank with respect to each of the types of property. The jury could have rejected the bank's claim as to the parts inventory, but accepted the claims as to the new and used equipment, and still awarded the amount stated in the verdict. The judgment is therefore reversed and the cause remanded with directions to dismiss with respect to the new and used equipment, and reversed and remanded for a new trial with respect to the parts inventory.

REVERSED AND REMANDED WITH DIRECTIONS.