749 N.W.2d 443 (2008)
275 Neb. 735
Roger FRANK et al., Appellees,
v.
Fred A. LOCKWOOD and Fred A. Lockwood & Co., P.C., a Nebraska corporation, Appellants.
No. S-06-731.
Supreme Court of Nebraska.
May 23, 2008.
*446 David A. Domina and Claudia L. Stringfield-Johnson, of Domina Law Group, P.C., L.L.O., and Kevin J. Dostal, Omaha, for appellants.
*447 Jarrod P. Crouse, of Sorensen, Mickey & Hahn, P.C., and Anthony Viorst, of Viorst Law Offices, P.C., Denver, CO, for appellees.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*444 MILLER-LERMAN, J.

NATURE OF CASE
Fred A. Lockwood and Fred A. Lockwood & Co., P.C., appeal the order of the district court for Scotts Bluff County overruling their motion for judgment notwithstanding the verdict. A jury had found in favor of Roger Frank (Frank) and his wife, Connie Frank, on their claim for accounting malpractice in connection with their 2001 personal federal and Nebraska income tax returns and awarded damages of $37,879 against Lockwood. We reverse in part, and remand for a new trial.

STATEMENT OF FACTS
Frank owns and operates various business ventures. In 1997, Frank purchased land near Scottsbluff, Nebraska, and titled the land in the name of one of his businesses, Frank Enterprises, Inc., an S corporation that for tax purposes passes its income and deductions through to its owners, Frank and his wife. In February 2001, Frank, on behalf of the corporation, entered into a contract to sell a portion of the land. After signing the contract, Frank explored possibilities for deferring taxation of gain on the sale of the land by use of a like-kind exchange pursuant to the Internal Revenue Code, I.R.C. § 1031 (2000).
In June 2001, Frank consulted an attorney who specialized in § 1031 exchanges. The attorney advised Frank that, among other things, he should consult a tax professional regarding tax implications of a § 1031 exchange. Frank's accountant at the time was Lockwood. Frank testified at trial in this present case that on occasions in June and September 2001, he spoke with Lockwood, and that Lockwood told him the Franks had $225,000 in tax credits that could be used to offset taxes that may be incurred as a result of the land sale. Frank's attorney testified that he spoke with Lockwood in September and that Lockwood also told him such tax credits were available. Lockwood testified at trial that he might have stated the Franks had tax credits, but he denied that he advised Frank such credits could be used to offset tax on the sale because such a calculation would require knowledge of financial information that was not available at that time.
The sale closed on October 9, 2001, and Frank Enterprises received proceeds of $1,296,781.20. Of this amount, $1 million was deposited with a qualified intermediary that would hold the proceeds for purposes of the anticipated § 1031 exchange. The remaining proceeds, less closing costs, were transferred to the Franks. Frank testified that his decision to retain the remaining proceeds rather than using the entire proceeds in a § 1031 exchange was based on Lockwood's advice regarding the availability of tax credits. Subsequent to the sale, on October 15, Frank met with Lockwood to review the Franks' 2000 personal tax returns, the filing of which had been extended and which are not directly at issue in this case. Frank testified that at the October 15 meeting, Lockwood provided greater detail regarding the tax credits and again advised him that the credits could be used to offset tax from the sale. In contrast, Lockwood testified that he gave Frank information regarding the tax credits on October 15 but that he did *448 not tell Frank that the credits could be used to offset tax from the land sale.
In early 2002, after using part of the land sale proceeds to purchase replacement properties for a § 1031 exchange, Frank determined that he had purchased sufficient replacement property and that he could withdraw the remaining proceeds of approximately $500,000 being held by the qualified intermediary. Frank testified that he made this decision based on Lockwood's advice that he could use tax credits to offset any capital gains tax resulting from failure to use the entire proceeds to buy replacement property.
On April 15, 2002, the date when the Franks' 2001 personal tax return was due, Frank met with Lockwood regarding his 2001 income taxes. On that day, Lockwood informed Frank, for what Frank testified was the first time, that Frank would not be able to use any of the tax credits to offset the capital gains tax from the land sale and that as a result, the Franks would owe a large tax liability for 2001. Lockwood advised Frank to file an extension, but Lockwood had not estimated the Franks' 2001 tax liability and did not advise Frank to pay an estimate of taxes due. Frank testified that if Lockwood had advised him to pay estimated taxes on April 15, 2002, he would have done so.
On October 4, 2002, Lockwood provided the Franks with a 2001 tax return. Filing instructions included with the return stated that the return was to be mailed on or before October 15, 2002. After receiving the return, Frank decided to consult with another accountant to review the return. After reviewing the return, the other accountant gave Frank a list of suggestions for reducing the tax liability, which list Frank gave to Lockwood. Lockwood incorporated most of the suggestions into revised tax returns which were completed in November. Frank did not file the returns and pay the tax liability until some time in December. Frank consulted with his attorney prior to filing the tax returns. Frank testified at trial that in December, prior to filing the returns, he was aware that penalties and interest were accruing. A letter dated December 12, 2002, from Frank's attorney to Lockwood was entered into evidence at trial. Frank had authorized the attorney to write the letter. The attorney stated in the letter that although penalties and interest were accruing, it was important to take time to ensure that "whatever is filed is the best result you can prepare."
After the Franks filed the tax returns and paid the taxes for 2001, both the Internal Revenue Service (IRS) and the Nebraska Department of Revenue provided the Franks notices that penalties and interest were due with respect to the 2001 returns. Penalties were approximately $2,925 for the federal and $2,291 for the state; interest was approximately $6,285 for the federal and $1,378 for the state. Penalties and interest related to both returns totaled approximately $37,879.
On July 15, 2003, the Franks and Frank Enterprises filed a complaint against Lockwood and Fred A. Lockwood & Co., P.C. (hereinafter referred to collectively as "Lockwood"). The Franks asserted a cause of action for accounting malpractice. Trial in the matter was held February 13 through 16, 2006. After the Franks rested their case, Lockwood moved for directed verdict, arguing that there was no proof of damages and no proof of proximate cause of damages. The court sustained the motion for directed verdict as to Frank Enterprises on the basis that all income and deductions were passed through to the Franks and therefore the damage, if any, was to the Franks and not to Frank Enterprises. The court also sustained the motion for directed verdict to the extent *449 that the Franks claimed lost profits because any such damages were not definite. The court overruled the remainder of the motion for directed verdict, and the defense presented its case. Lockwood renewed the motion for directed verdict at the close of all the evidence, and the court overruled the renewed motion.
On February 16, 2006, the jury returned a verdict in favor of the Franks and awarded damages in the amount of $37,879. Lockwood filed a motion for judgment notwithstanding the verdict. The court overruled the motion. The court noted that the jury's damage award was equal to the amount the evidence established as penalties and interest paid by the Franks with respect to their 2001 federal and Nebraska tax returns. The court therefore determined that "the jury awarded nothing in actual income taxes paid" and that the verdict "represents the exact amount the jury concluded was paid in penalties and interest." The court noted that there was evidence from which the jury could find that (1) Lockwood gave Frank erroneous advice regarding the availability of tax credits to offset any tax due on the 2001 returns that might result from the land sale; (2) Frank's decision to forgo reinvesting the entire proceeds of the land sale in a like-kind exchange was based on such erroneous advice; (3) if Frank had known that the tax credits could not be used to offset tax and that he would have a large tax liability for 2001, he would have paid estimated taxes in order to avoid penalties and interest for late payment of such tax liability; and (4) Lockwood's erroneous advice caused the Franks to incur penalties and interest that they would not otherwise have incurred. The court concluded that "the verdict represents an appropriate item of damage that was proximately caused by negligent professional advice, and the verdict should stand."
Lockwood appeals.

ASSIGNMENTS OF ERROR
Lockwood generally asserts, restated, that the district court erred in overruling his motions for directed verdict and his motion for judgment notwithstanding the verdict because there was insufficient evidence that the Franks suffered damages as the result of his advice in connection with the preparation and filing of the Franks' 2001 income taxes.

STANDARDS OF REVIEW
[1] Concerning the overruling of a motion for a directed verdict made at the close of all the evidence, appellate review is controlled by the rule that a directed verdict is proper only when reasonable minds can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. Bellino v. McGrath North, 274 Neb. 130, 738 N.W.2d 434 (2007).
[2, 3] On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. Id. To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. Id.

ANALYSIS
[4] Lockwood assigns error to the denial of his motions for directed verdict and *450 for judgment notwithstanding the verdict. A motion for judgment notwithstanding the verdict may be granted when the movant's previous motion for directed verdict, made at the conclusion of all the evidence, should have been sustained. McLain v. Ortmeier, 259 Neb. 750, 612 N.W.2d 217 (2000). We conclude that the court erred in denying parts, but not all, of Lockwood's motion for judgment notwithstanding the verdict.

Evidence Supports Finding That Lockwood Neglected a Reasonable Duty.
[5, 6] We have stated that before a plaintiff may recover for accounting malpractice, the essential elements of any negligence action must be proved, namely, (1) duty, (2) breach, (3) causation, and (4) resulting damages. World Radio Labs. v. Coopers & Lybrand, 251 Neb. 261, 557 N.W.2d 1 (1996). Stated in the terms we have used in other cases of professional negligence, a plaintiff alleging accounting negligence must prove three elements: (1) the accountant's employment, (2) the accountant's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client. See Bellino, supra (regarding attorney negligence). Lockwood does not appear to dispute that his employment by the Franks was shown. Therefore, in determining whether the district court should have granted judgment notwithstanding the verdict, we consider whether the evidence supports findings that Lockwood neglected a reasonable duty and that such negligence resulted in and was the proximate cause of the penalties and interest paid by the Franks. In this respect, we note that a proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred. Id.
With regard to neglect of a reasonable duty, the district court's ruling referred primarily to evidence that Lockwood gave erroneous advice regarding the § 1031 transaction. Although it recognized that the jury's damage award was attributable to penalties and interest, the court emphasized that the Franks' mistaken assumption, based on Lockwood's erroneous advice, that tax credits were available to offset tax on the land sale was the cause of the damages awarded. We disagree with the emphasis of such analysis.
Based on evidence in the record that the Franks paid penalties and interest of approximately $37,879 related to their 2001 federal and Nebraska tax returns, the district court determined that the jury found malpractice and that the damages awarded by the jury consisted exclusively of penalties and interest. Neither Frank nor Lockwood disputes this characterization, and we agree that the evidence supports this interpretation of the jury's award. Because only penalties and interest are at issue, we need not determine or comment on whether any other items, such as the taxes paid by the Franks, were recoverable as damages. In this regard, we note that the Franks did not file a cross-appeal relative to the fact that the jury did not award damages in connection with the amount of taxes paid.
[7] The Franks incurred penalties and interest on their 2001 tax returns because the taxes were not timely paid on April 15, 2002, and because the tax returns were not timely filed on the extended due date of October 15. Although Lockwood's advice in connection with the payment and riling of the returns can give rise to liability, as discussed below, based on the evidence in this case, Lockwood's advice regarding the availability of credits as they pertained to the Franks' tax exposure due to the land sale could not be found to be the proximate *451 cause of the penalties and interest actually incurred.
We recognize that erroneous advice regarding the § 1031 transaction could conceivably have caused the Franks to fail to plan ahead for taxes being due on April 15, 2002. However, Frank's testimony was that he learned from Lockwood on April 15 that the tax credits were not available and that a large tax liability would be due. Frank further testified that if Lockwood had advised him to pay an estimated tax on that day, he would have done so. Such testimony indicates that Frank's financial situation was such that he would have been able to timely pay the taxes on April 15, thereby avoiding penalties and interest for late payment of taxes, even without advance knowledge that a tax liability would be due.
[8] However, we note that Frank also testified that Lockwood failed to advise him on April 15, 2002, that when filing for an extension of time to file their 2001 returns, the Franks should have paid an estimate of their tax liability in order to avoid penalties and interest. The accountant who was asked by Frank to review the returns prepared by Lockwood testified at trial that a reasonable accountant would have advised a client to pay such estimate when filing for an extension. Based on this evidence, the jury could have found that Lockwood neglected a reasonable duty by failing to advise the Franks to pay an estimated tax liability on April 15, 2002. Therefore, although Lockwood's advice regarding the § 1031 transaction could not be found to have caused the Franks to fail to timely pay their taxes, the jury could have found that Lockwood's further failure to advise the Franks to pay an estimated tax on April 15 caused the Franks to fail to timely pay their taxes.
We therefore determine that there was evidence from which the jury could have found that Lockwood neglected a reasonable duty and was liable for damages that resulted from such negligence. We must next consider whether Lockwood's negligence in failing to advise the Franks to pay estimated taxes on April 15, 2002, resulted in and was the proximate cause of the penalties and interest that comprise the jury's award of damages.

Although Interest May Be Recoverable Under Proper Circumstances, Evidence in This Case Did Not Establish That the Franks Suffered Damages From Paying Interest on Taxes.
[9] The evidence indicates that the Franks paid interest of $7,663 with respect to their federal and Nebraska taxes. Although we adopt a rule that interest paid to taxing authorities is available as an item of damages in an accounting malpractice case upon proper proof, and we reject a rule that interest on taxes is precluded as a recoverable item of damages, we conclude that under the evidence presented in this case, the jury could not have found that the Franks suffered damage as a result of the payment of interest. Therefore, the district court should have granted judgment notwithstanding the verdict to the extent interest was awarded as an item of damages.
We note that some courts have held that interest due on taxes is not recoverable as an item of damages in an accounting malpractice action. See, Eckert Cold Storage, Inc. v. Behl, 943 F.Supp. 1230 (E.D.Cal. 1996); Leendertsen v. Price Waterhouse, 81 Wash.App. 762, 916 P.2d 449 (1996); Alpert v. Shea Gould Climenko, 160 A.D.2d 67, 559 N.Y.S.2d 312 (1990); Orsini v. Bratten, 713 P.2d 791 (Alaska 1986). Generally, the reasoning behind such decisions is that because the plaintiff had the use of the money during the period of late payment or underpayment, the plaintiff is not damaged when he or she is ultimately *452 required to pay interest for such use of the money. The court in Eckert Cold Storage, Inc., stated that "interest paid to the I.R.S. represents a payment for the plaintiffs' use of the tax money during the period after the taxes came due and before they were paid; as such, to the extent that the I.R.S. charges the market rate, interest is not a proper element of damages." 942 F.Supp. at 1235. We agree with the reasoning of these courts to the extent that interest paid to the IRS represents a payment for use of money and that therefore, a person who has use of the money is not generally damaged by the payment of interest. However, as discussed below, we also recognize that there may be exceptions to this general rule.
The Franks urge us to reject a blanket rule precluding recovery of interest on taxes as an item of damages, and we agree that a blanket rule should not be adopted. The Franks cite to O'Bryan v. Ashland, 717 N.W.2d 632 (S.D.2006), as the preferred analysis. In O'Bryan, the Supreme Court of South Dakota held that "the issue whether a plaintiff has actually been damaged from the interest charged by the IRS to the taxpayer on unpaid tax liability is a question of fact," and the court refused "to adopt a blanket rule forbidding interest recovery in accounting malpractice actions." 717 N.W.2d at 639. The Supreme Court of South Dakota noted that other courts have acknowledged the possibility that plaintiffs could prove that they were truly damaged by the imposition of interest and that such courts have determined that "whether a [plaintiff] has been damaged is left to the finder of fact, with the burden of proof on the [plaintiff]." Id. at 637.
[10] We agree with the Supreme Court of South Dakota that it is possible that a plaintiff could prove under appropriate circumstances that the plaintiff was damaged by the imposition of interest. A plaintiff might be able to show that he or she was damaged by the imposition of interest either because he or she could have borrowed money during that time at a rate lower than what was assessed by the taxing authorities or because he or she had sufficient money to pay the taxes but the value of the use of such money to the plaintiff during the penalty period was less than the rate of interest charged by the taxing authorities. For example, in O'Bryan, the South Dakota Supreme Court noted evidence that the plaintiff "would not have necessarily had to borrow the money [to pay taxes] from a bank; he may have been able to borrow money from his family as he had done before." 717 N.W.2d at 639. The jury in O'Bryan could have inferred from such evidence that the plaintiff would have paid his family no interest or interest at a rate below the market rate that would have been charged by a bank. Therefore, the jury could have found that the plaintiff suffered a loss when he had to pay interest to the IRS at a rate higher than was otherwise available to the plaintiff.
The O'Bryan approach, which we favor, is similar to that taken by the Massachusetts Court of Appeals in Miller v. Volk, 63 Mass.App. 303, 305-06, 825 N.E.2d 579, 582 (2005), in which the court did not adopt a blanket rule precluding recovery of interest paid to the IRS in an accounting malpractice action, but denied recovery of interest under the particular facts of the case because "no proof was offered that the interest paid to the IRS on the deficiency exceeded the value to the plaintiffs of having use of the money in the meantime. There was, in other words, no proof of actionable damages." While we do not hold that plaintiffs are completely barred from recovering damages related to interest paid to the IRS, we think that the *453 burden remains on the plaintiff to prove that the circumstances were such that he or she was damaged by the payment of interest. We therefore do not adopt a blanket rule precluding recovery of interest on taxes as an element of damages. Instead, we hold that interest on taxes is recoverable in accounting malpractice actions to the extent plaintiffs carry their burden of showing that they were damaged by the imposition of interest.
The dissent in this case disagrees with placing such burden on the plaintiff. The dissent urges adoption of an approach set forth in Ronson v. Talesnick, 33 F.Supp.2d 347 (D.N.J.1999). Under the Ronson approach, once the plaintiff has proved that he or she paid interest to the IRS, the burden shifts to the defendant to prove that the plaintiff benefited from the defendant's negligence. In Ronson, the federal district court for New Jersey attempted to determine whether New Jersey state law would allow a plaintiff to recover interest paid to the IRS in an accounting malpractice action. Based on New Jersey's adoption of the collateral source rule and the benefits rule in other types of tort actions, the federal district court predicted that New Jersey would follow the above approach in which the plaintiff merely needed to prove that he or she paid interest to the IRS as a result of the defendant's negligence and then the defendant had the burden to show that the plaintiff benefited from the defendant's negligence.
We disagree with the underlying reasoning in Ronson. We do not think the collateral source rule and the benefits rule are applicable to the present question because such rules presume that the plaintiff has proved damages. As noted above, we generally agree with the reasoning of other courts that interest paid to the IRS represents a payment for use of money and that therefore, a person who has use of the money is not generally damaged by the payment of interest. We recognize that there may be circumstances under which a plaintiff actually is damaged, but the burden remains on the plaintiff to prove that such circumstances exist. We have stated, "Damages, like any other element of a plaintiff's cause of action, must be pled and proved, and the burden is on the plaintiff to offer evidence sufficient to prove the plaintiff's alleged damages." J.D. Warehouse v. Lutz & Co., 263 Neb. 189, 195, 639 N.W.2d 88, 92-93 (2002). The dissent agrees with the reasoning in Ronson that a defendant should not benefit from a presumption that a plaintiff maintained a sum of money and earned interest in an amount comparable to the interest rate charged by the IRS. However, because the plaintiff has the burden to prove his or her damages, we do not think that the plaintiff should benefit from the presumption that he or she did not benefit from having use of the money and therefore was damaged by paying interest. "[T]o the extent that the I.R.S. charges the market rate, interest is not a proper element of damages." Eckert Cold Storage, Inc. v. Behl, 943 F.Supp. 1230, 1235 (E.D.Cal.1996). To the extent that interest charged by the IRS is above the market rate or does not reflect the value of the use of the money, we think it is the plaintiff's duty to so prove, and the plaintiff must put on evidence, that the interest charged by the IRS was greater than the value of the use of the money. In the present case, the Franks put on no such evidence.
[11] The dissent also cites cases which adopt an interest differential approach to measuring damages in these situations. We note that the Ronson approach and the interest differential approach are significantly different in that Ronson puts the burden on the defendant to prove a benefit to the plaintiff, while under the interest *454 differential approach, the burden apparently still remains on the plaintiff to prove the interest differential. We do not reject the interest differential approach as a possible measure of damages, and we think that it could be one of the circumstances referred to above in which a plaintiff could prove damages from the payment of interest to the IRS. However, in the present case, the Franks did not present sufficient evidence regarding the interest differential; they presented evidence that they paid interest to the IRS, but they presented no evidence that they actually earned less than what they paid. Because the Franks* evidence regarding interest differential was inadequate, we need not decide in this case whether we would adopt the interest differential approach. However, we note that even if we were to adopt the interest differential approach, we would still conclude in this case that because the Franks did not present sufficient evidence regarding interest differential, they did not prove damages with respect to the interest paid to the IRS.
With the foregoing principles in mind, we observe that under the circumstances of this case, the Franks failed to provide evidence that they were damaged by the payment of interest. To the contrary, Frank testified that if Lockwood had told him to pay estimated taxes on April 15, 2002, he would have done so. The evidence also indicates that the Franks paid the taxes due when they filed the tax returns in December. Such evidence indicates that the Franks had the use of the money for the period after the taxes were due on April 15 and before they paid the taxes in December. The Franks did not present evidence to indicate that there were circumstances, such as those outlined above, such that they were damaged by the payment of interest on their taxes. The evidence showed only that the Franks had to pay interest to the taxing authorities for use of the money between April and December. There was no evidence from which the jury could have concluded that the Franks were damaged by payment of the interest because there was no evidence that the value of the use of the money to the Franks during that time was less than the rate of interest charged by the taxing authorities. Because there was no evidence of damage resulting from the payment of interest, we conclude that the district court erred when it failed to grant Lockwood's motion for judgment notwithstanding the verdict to the extent that the jury awarded damages of $7,663 for interest paid on the Franks' federal and Nebraska taxes, and we reverse the district court's ruling to that extent.

Under the Facts of This Case, the Franks May Recover Penalties Related to Failure to Timely Pay Taxes, But Not Penalties Related to Failure to Timely File Returns.
The evidence presented at trial indicates that the Franks incurred penalties of $27,925 with respect to their federal taxes and $2,291 with respect to their Nebraska taxes, for a total of $30,216. We conclude that penalties may be a recoverable element of damages; however, we further conclude that only a portion of the penalties in this case was the result of Lockwood's advice and, in particular, his failure to advise the Franks to pay estimated taxes on April 15, 2002.
[12] As a general matter, it has been held that penalties may be recoverable as an element of damages when such penalties are the result of an accountant's negligence. See Bick v. Peat Marwick & Main, 14 Kan.App.2d 699, 799 P.2d 94 (1990); Moonie v. Lynch, 256 Cal.App.2d 361, 64 Cal.Rptr. 55 (1967). We agree with these authorities that penalties may be recovered as an item of damages in an accounting malpractice action. Unlike interest, *455 penalties are not a payment for use of money but instead are a payment beyond interest to penalize a taxpayer for late payment of taxes or late filing of a return. To recover penalties, the taxpayer must show that the accountant's negligence was the proximate cause of the penalties.
[13] The penalties incurred by the Franks in this case appear to have been of two typeshose incurred because the Franks failed to pay taxes when due on April 15, 2002, and those incurred because the Franks failed to file their returns when due as extended to October 15. Under federal law, I.R.C. § 6651 (2000) provides in subsection (a)(1) that a taxpayer may be assessed a penalty for failure to timely file a return and provides in subsection (a)(2) that a taxpayer may be assessed a separate penalty for failure to timely pay taxes due. In addition, I.R.C. § 6654 (2000) provides that penalties may be assessed for underpayment of estimated taxes. Nebraska law provides for similar penalties for failure to timely file returns, Neb.Rev. Stat. § 77-2789 (Reissue 2003), and for underpayment of estimated taxes, 316 Neb. Admin. Code, ch. 20, § 007 (1998).
The evidence indicates that the Franks were required to pay their federal and Nebraska tax liabilities for 2001 on April 15, 2002. Because extensions were filed for and granted, the tax returns themselves were not due on April 15, but were due on the extended due date of October 15. However, the Franks did not file their 2001 tax returns or pay the tax due on such returns until December. Because the Franks failed to timely pay on April 15 and failed to timely file on October 15, they were subject to both penalties for late payment of taxes and penalties for late filing of returns.
As indicated above, there was sufficient evidence from which the jury could find that Lockwood was negligent in failing to advise the Franks to pay an estimate of their 2001 tax liability on April 15, 2002. Because the failure to timely pay taxes subjected the Franks to possible penalties, the jury could have found that Lockwood's negligence resulted in and was the proximate cause of any such penalties that were imposed. We therefore conclude that the district court did not err in denying Lockwood's motion for judgment notwithstanding the verdict with respect to any portion of the damages award that was attributable to penalties for the Franks' failure to timely pay taxes.
[14] However, to the extent any penalties were imposed for the Franks' failure to timely file the tax returns, such late filing penalties were not a result of Lockwood's advice or the failure to pay taxes on April 15, 2002. Instead, based on the evidence, the late filing penalties were the result of the Franks' failure to file their 2001 federal and Nebraska tax returns on or before the extended due date of October 15. In this regard, there was evidence that Lockwood provided a tax return to the Franks in early October with instructions that stated that the return was to be mailed on or before October 15. The evidence further indicates that the return was not filed at that time because Frank chose to have another accountant and Frank's attorney review the return. Frank's testimony and the letter Frank's attorney sent to Lockwood in December indicated that Frank was aware that penalties and interest were accruing but chose to take time for a careful review of the returns. Therefore, the evidence was not sufficient for a jury to determine that Lockwood breached a duty with respect to the October 15 filing deadline or that any damages resulting from the late filing of returns were the result of Lockwood's advice. Because late filing penalties imposed were not the result *456 of Lockwood's negligence, the district court erred when it denied Lockwood's motion for judgment notwithstanding the verdict with respect to the portion of the damages award that was attributable to late filing penalties, and we reverse the district court's ruling to that extent.
We note that the evidence presented at trial establishes only total amounts for the penalties imposed by the IRS and for penalties imposed by the Nebraska Department of Revenue. The evidence does not distinguish whether such penalties were penalties occasioned by the failure to timely pay taxes or by the failure to timely file returns, or some combination of both. As we have determined above, to the extent such penalties are penalties for failure to timely file returns, under the facts of this case, they are not recoverable as damages. However, to the extent such penalties are penalties for failure to timely pay the taxes, under the facts of this case, they are recoverable as damages. Because the evidence in the record does not allow us to determine what portion of the penalties are for late payment of the taxes which are recoverable, we find it necessary to remand this cause to the district court for a new trial limited to a determination of the portion of damages attributable to penalties imposed for failure to timely pay taxes and, upon a proper showing, awarding the Franks an amount of damages equal to penalties for failure to timely pay taxes. See Adams State Bank v. Navistar Financial Corp., 229 Neb. 334, 426 N.W.2d 525 (1988) (holding that district court erred in denying judgment notwithstanding verdict as to two components of damages but not as to third component and remanding for new trial to determine damages with respect to third component).

CONCLUSION
We conclude that there was not sufficient evidence from which the jury could find that the Franks were damaged by the imposition of interest on taxes and that there was not sufficient evidence that Lockwood's negligence was the proximate cause of penalties for the Franks' failure to timely file their tax returns. The district court therefore erred in denying Lockwood's motion for judgment notwithstanding the verdict with regard to those two portions of the damages awarded by the jury, and we reverse the district court's ruling to that extent. We further conclude that there was sufficient evidence from which the jury could find that Lockwood neglected a reasonable duty by failing to advise the Franks to pay an estimate of their taxes on April 15, 2002, and that the evidence supported a finding that Lockwood's negligence was the proximate cause of penalties imposed for the Franks' failure to timely pay their taxes. Therefore, the district court did not err in denying Lockwood's motion for judgment notwithstanding the verdict with regard to the portion of damages attributable to such late payment penalties. However, because the portion of damages awarded attributable to late payment penalties is not ascertainable from the record on appeal, we remand the cause to the district court for a new trial limited to a determination of the portion of damages attributable to penalties for the failure to timely pay taxes. The court thereafter should enter judgment, notwithstanding the original verdict, in the amount determined to be attributable to late payment penalties.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR A NEW TRIAL ON THE ISSUE OF DAMAGES.
WRIGHT, J., not participating.
CONNOLLY, J., dissenting in part.
I disagree with that part of the majority opinion that holds that the Franks cannot *457 recover interest they paid to the IRS because of their accountant's negligence. The opinion concludes that the Franks had use of the money, and the IRS interest is just their "payment" for that use.
I do not believe that the Franks should have the burden to prove the value of their use of the money was less than the rate of interest charged by the IRS when they incurred the interest only because of Lockwood's negligence. The majority's holding ignores the essential fact that the Franks would not have incurred a "payment" for their unlawful use of the money but for Lockwood's negligent advice, so they are not placed in a better position by their recovery of this "payment." I concede that there may be circumstances when the harm caused by the practitioner's negligence is offset by the benefit the taxpayer received from having use of the money. But the "special benefit" is Lockwood's burden to prove.
The majority concedes that there was sufficient evidence for a jury to conclude that Lockwood breached a duty to the Franks and "was liable for damages that resulted from such negligence." But it fails to answer the question "whether Lockwood's negligence in failing to advise the Franks to pay estimated taxes on April 15, 2002, resulted in and was the proximate cause of the interest" the Franks paid. To the extent the majority's failure to discuss causation implies that the Franks' payment of IRS interest is not a legally recognized or compensable injury, I point out that such a reading is contrary to the greater weight of authority in tax malpractice cases.
Many courts have recognized compensatory damages for the difference between what the taxpayers owe the IRS because of a practitioner's negligence and what they would have owed absent that negligence.[1] It is true that taxpayers have the burden of proving that they incurred tax liabilities they could have avoided but for the practitioner's negligence.[2] But the majority's opinion imposes an additional burden: Taxpayers must rebut the presumption that they received a benefit from their unlawful use of the money. If taxpayers do not rebut this presumption, then the majority holds that their payment of interest is not damages. Thus, the issue is not proximate causation, but legally recognized damages.
The rule that taxpayers must show they were damaged seems reasonable enough on its face; damages are an element of the taxpayer's negligence claim. But the real issue is whether the Franks received a benefit because of Lockwood's negligence that offset the additional costs they incurred. Obviously, the Franks had use of *458 the money only because of Lockwood's negligence. Both their harm and any benefit they received from having use of the money flowed from Lockwood's negligence. But this point gets lost in the majority opinion because it omits any discussion of causation.
If the Franks' harm should be offset by the benefit of their having use of the money, the burden of proving the offset falls on Lockwood. This commonsense notion of equitable burdens is addressed in the Restatement (Second) of Torts § 920 at 509 (1979), the "special benefit" rule:
When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.
Mitigation of damages is an affirmative defense, which the defendant has the burden to prove.[3] Under the Restatement, Lockwood must prove that a "special benefit" to the Franks resulted from his negligence and offset the taxpayer's damages. While "mitigation of damages" here is merely shorthand for expressing the plaintiff's net damages, many courts have recognized the rule that a "defendant generally may show that an act or omission forming the basis of a complaint was a benefit as well as an injury to the plaintiff."[4]
Other courts put the burden on the tax practitioner to prove it is equitable to offset the taxpayer's harm with the taxpayer's benefit in using the money.[5] Yet the majority opinion relies on O'Bryan v. Ashland[6] to place the burden on the Franks to prove they have not benefited from the use of the money. This burden runs counter to the special benefit rule. Notably, the O'Bryan court made conflicting statements on this issue. Both parties had presented evidence on interest rates, and the court reserved for a future case the refinement of equitable burdens. It quoted with approval the federal district court's statement in Ronson v. Talesnick.[7] There, the court stated that "defendants should be permitted to come forward with evidence of benefit from the malpractice that could be applied to reduce a plaintiff's recovery."[8] I believe the majority opinion allows Lockwood to escape his burden to prove the Franks had received a benefit from his negligence.
Although the majority opinion states that it is not adopting a blanket rule precluding the recovery of IRS interest, it appears to set a high bar for taxpayers to prove damages. Its rule is consistent with the reasoning of a minority of courts that have denied recovery. Those courts reasoned that the recovery of IRS interest represents a windfall when the taxpayer had use of the money and could have presumably earned interest on the money while holding it.[9] But I find persuasive *459 the reasoning of the federal district court in Ronson, rejecting the windfall rationale for denying interest damages:
Denying recovery of IRS interest from a negligent accountant permits the tortfeasor to benefit from the presumption that a harmed taxpayer has been or should have been ingenious enough to (1) maintain a sum of money that he would have otherwise had to pay over to the IRS and (2) invest that money in a manner in which he earned interest in an amount comparable to the interest rate charged by the IRS.[10]
Like the district court in Ronson, I am not that naive to presume the taxpayer is clairvoyant. Other courts have also addressed the "windfall" concern. Those courts adopted a measure of damages that ensures both that the taxpayer does not receive a double recovery and that the taxpayer is not punished for failing to anticipate the practitioner's negligence. In Streber v. Hunter,[11] the Fifth Circuit allowed damages for the difference between the interest the taxpayer earned while having use of it and the interest charged by the IRS.[12] The court reasoned that "interest differential" damages is not a double recovery: "[A]sking for `interest differential' is not asking to keep the money earned on the [amount owed for taxes] while possessing it unlawfully; rather, it is asking to pay only the interest earned while possessing it unlawfully and not be penalized for conservative investing."[13]
Although the burden of proof was not at issue in Streber, the case demonstrates that there is no windfall concern if the plaintiffs harm is offset by any benefit the taxpayer received from having use of the money. The question here is which party should have the burden of proving that offset. In other cases, we have put the burden of proving an offset on the party claiming the offset.[14] In condemnation actions, we have specifically held the burden is on the condemnor to plead and prove special benefits to the remaining property that offset damage to the property.[15]
The Franks satisfied the elements of their claim when they proved that Lockwood breached a duty to them to use reasonable prudence and skill in advising them on tax matters for which they employed him and that his negligence caused them to incur expenses they would not have incurred otherwise. Requiring Lockwood to prove an offset does not permit the Franks to benefit from any presumption regarding damages. Instead, it eliminates presumptions against either party and requires each party to produce proof supporting their claims. Because the evidence did not support an offset of the Franks' damages, I would give the Franks the benefit of their jury verdict for the interest they paid to the IRS.
NOTES
[1] See, e.g., Carroll v. LeBoeuf, Lamb, Green & MacRae, L.L.P., 392 F.Supp.2d 621 (S.D.N.Y. 2005); Ronson v. Talesnick, 33 F.Supp.2d 347 (D.N.J. 1999); Jobe v. International Ins. Co., 933 F.Supp. 844 (D.Ariz.1995), order withdrawn upon settlement 1 F.Supp.2d 1403 (D.Ariz. 1997); Dail v. Adamson, 212 Ill. App.3d 66, 570 N.E.2d 1167, 156 Ill.Dec. 445 (1991); Cameron v. Montgomery, 225 N.W.2d 154 (Iowa 1975); Jamie Towers Housing v. William B. Lucas, 296 A.D.2d 359, 745 N.Y.S.2d 532 (2002); Wynn v. Estate of Holmes, 815 P.2d 1231 (Okla.App.1991), overruled on other grounds, Stroud v. Arthur Andersen & Co., 37 P.3d 783 (Okla.2001); McCulloch v. Price Waterhouse LLP, 157 Or.App. 237, 971 P.2d 414 (1998); Merriam v. Continental Cas. Co., No. 98-2522-FT, 1999 WL 326183 (Wis.App. May 25, 1999) (unpublished disposition listed in "Table of Unpublished Opinions" at 228 Wis.2d 510, 597 N.W.2d 774 (Wis.App. 1999)). See, also, Jamison, Money, Farmer & Co. v. Standeffer, 678 So.2d 1061 (Ala.1996); Worman v. Carver, 87 P.3d 1246 (Wyo.2004); Jacob L. Todres, Malpractice and the Tax Practitioner: An Analysis of the Areas in Which Malpractice Occurs, 48 Emory L.J. 547 (1999).
[2] See Ronson, supra note 1.
[3] Roth v. Wiese, 271 Neb. 750, 716 N.W.2d 419 (2006). Compare David v. DeLeon, 250 Neb. 109, 547 N.W.2d 726 (1996).
[4] See 22 Am.Jur.2d Damages § 383 at 347 (2003).
[5] See, Ronson, supra note 1; Billings Clinic v. Peat Marwick Main, 244 Mont. 324, 797 P.2d 899 (1990); Wynn, supra note 1. Compare Lee v. Lee, 47 S.W.3d 767 (Tex.App.2001).
[6] O'Bryan v. Ashland, 717 N.W.2d 632 (S.D. 2006).
[7] Ronson, supra note 1.
[8] Id. at 355.
[9] See, Alpert v. Shea Gould Climenko, 160 A.D.2d 67, 559 N.Y.S.2d 312 (1990); Leendertsen v. Price Waterhouse, 81 Wash.App. 762, 916 P.2d 449 (1996).
[10] Ronson, supra note 1, 33 F.Supp.2d at 355.
[11] Streber v. Hunter, 221 F.3d 701 (5th Cir. 2000).
[12] See id. See, also, King v. Deutsche Bank Ag, No. CV 04-1029-HU, 2005 WL 611954 (D.Or. Mar. 8, 2005) (unpublished opinion).
[13] Streber, supra note 10, 221 F.3d at 735. See, also, O'Bryan, supra note 5.
[14] See, e.g., Calabro v. City of Omaha, 247 Neb. 955, 531 N.W.2d 541 (1995); Brown v. Clayton Brokerage Co., 238 Neb. 646, 472 N.W.2d 381 (1991); Phillips v. State, 167 Neb. 541, 93 N.W.2d 635 (1958).
[15] See Frank v. State, 177 Neb. 488, 129 N.W.2d 522 (1964). Accord Richardson v. Big Indian Creek Watershed Conservancy Dist., 181 Neb. 776, 151 N.W.2d 283 (1967). See, also, NJI2d Civ. § 13.10.