768 N.W.2d 132 (2009)
278 Neb. 87
Andrea LACEY, appellee,
v.
STATE of Nebraska, acting through the NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, appellant.
No. S-08-626.
Supreme Court of Nebraska.
July 10, 2009.
*134 Jon Bruning, Attorney General, and Ryan C. Gilbride for appellant.
Kathleen M. Neary, of Vincent M. Powers & Associates, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
WRIGHT, J.

NATURE OF CASE
Andrea Lacey filed an employment discrimination claim against the State of Nebraska pursuant to the Nebraska Fair Employment Practice Act and title VII of the Civil Rights Act of 1964. Lacey alleged sexual harassment, retaliatory discharge, and retaliatory failure to hire. A jury awarded Lacey $60,000 in damages on her sexual harassment claim but found in favor of the State on the retaliation claims. The State appeals, and we affirm.

SCOPE OF REVIEW
A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. Roth v. Wiese, 271 Neb. 750, 716 N.W.2d 419 (2006).
A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. Poppe v. Siefker, 274 Neb. 1, 735 N.W.2d 784 (2007).
To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. Frank v. Lockwood, 275 Neb. 735, 749 N.W.2d 443 (2008).

FACTS
Lacey began her employment with the Department of Correctional Services (DCS) as a temporary employee on December 20, 2003. As a warehouse technician, she performed office work, ordered supplies, and "pulled" orders for all of the correctional facilities in Nebraska. Her employment was to end on June 11, 2005. Jeff Ehlers, Lacey's first supervisor, stated that she performed her job very well. When Ehlers was promoted to acting warehouse manager, Jeff Drager became Lacey's supervisor.
Drager testified that he tried to create a fun atmosphere at the warehouse by promoting "bagging" on fellow employees, or giving each other a hard time in a joking manner. This joking consisted of sexual comments and questions directed toward Lacey that started within 2 weeks of the beginning of her employment. Examples of Drager's behavior include asking Lacey how often she and her boyfriend had sex, asking her questions about oral sex with her boyfriend, asking Lacey whether she had sex in the parking lot, and asking whether she had sex when she got home. *135 Drager often commented to Lacey that she looked tired, asked her whether she was out having sex all night and whether her boyfriend wore her out the night before, and commented that she probably had sex all of the time because she was at a time in her life when women want to have sex frequently. He talked about the size of male genitalia and repeatedly asked Lacey whether size mattered to her.
The vulgarity persisted and ranged in frequency from two to three times per week to every day. By June 2004, Drager made comments to Lacey almost daily. Ron Looking Elk, Lacey's coworker, overheard the sexual comments Drager made to Lacey three to four times per week. Looking Elk told Drager that he was "crossing the line," but Drager laughed off the warning. Looking Elk also testified that Ehlers heard some of Drager's comments to Lacey, but that Ehlers said he did not want to hear the conversation and that Ehlers would leave the room. Drager usually made comments to Lacey when other people were not around.
Drager also subjected Lacey to uninvited touching. He would lean his chest on her back while she was sitting down and place his face next to hers. On one occasion, he ran his fingers through her hair. Lacey testified that Drager constantly stared at her breasts and told her the uniforms she and other employees wore did not fit her the way they fit the men. He threw candy and shot rubberbands at her chest area, trying to get the objects to go down the front of her blouse. Drager followed Lacey around so often that other employees teased her that he was her shadow. Lacey testified that he treated her differently than he treated the male employees.
On one occasion, Lacey observed Drager sitting on stairs outside the room where she was working. When she asked him what he was doing, he said he was "just watching" her. Lacey told Ehlers about the incident, but he did not follow up on the complaint. In response to Drager's harassment, Lacey asked him to stop and told him to leave her alone.
On June 27, 2004, Lacey told Ehlers that she was fed up with Drager's behavior and was going to quit. Ehlers told her not to quit, and he instructed her to make a list of the instances of harassment. The next day, Lacey and Ehlers met with Jan Lehmkuhl, the DCS materiel administrator, at the central DCS office. She informed Lacey that DCS had zero tolerance for sexual harassment and asked Lacey to go back to the warehouse. Lacey agreed to do so, under the impression that the matter would be resolved. She returned to work and continued to work with Drager 40 hours per week. After the meeting, no one contacted Lacey to determine whether the situation had improved.
DCS did not investigate Drager's actions until the end of July 2004. At that time, the investigator concluded that Drager violated the sexual harassment policies of the State. Ehlers ordered Drager and Lacey to stay away from each other and instructed Lacey to report to Mark McCoy instead of Drager. Drager had stopped making inappropriate comments to Lacey after she filed the complaint.
Ehlers was away from the warehouse between August 16 and 19, 2004. During that time, McCoy observed Drager following Lacey around. On August 18, McCoy telephoned Ehlers and told him that Drager was bothering Lacey. Drager had called Lacey into his office and asked her to sign a paper stating that he was of good character. Lacey refused, and Drager told her that she "pissed him off" and that he was going to "[expletive] [her] up." Looking Elk overheard Drager tell Lacey that "if this got back to his wife, he was *136 gonna [expletive] her up." McCoy and Looking Elk observed Lacey crying after Drager confronted her.
A disciplinary hearing was held on August 20, 2004, regarding Lacey's initial complaint against Drager. Drager did not mention the August 18 incident and stated there had not been any problems since the beginning of the investigation. Following the hearing, Drager was transferred from the warehouse to a position at the Lincoln Correctional Center. On September 2, Lehmkuhl issued Drager a written order directing him to stay away from Lacey.
On December 22, 2004, an inmate assigned to work in the DCS warehouse was found to be in possession of tobacco, which is contraband. The inmate claimed that Lacey had sold him the tobacco. An officer investigated the allegations. There was no evidence corroborating the inmate's claims, but the officer concluded that Lacey was guilty because "she was calm about the whole situation and didn't seem to think that it was that big a deal." Lacey's employment was terminated in December 2004 as a result of the investigation. Lehmkuhl recommended that Lacey not be eligible for rehire in the future. Lacey applied for a full-time job as a warehouse technician with DCS in June 2005, and she was not hired.
Lacey filed a complaint on June 7, 2006, alleging violations of the Nebraska Fair Employment Practice Act and title VII of the Civil Rights Act of 1964. She alleged sexual harassment, retaliatory discharge, and retaliatory failure to hire. After the close of the evidence, the district court denied both parties' motions for directed verdict, and the issues were submitted to the jury. The jury found for the State on both retaliation claims and found for Lacey on the sexual harassment claim. It awarded her $0 for lost wages and benefits and $60,000 for other compensatory damages. The court overruled the State's motions for new trial and for judgment notwithstanding the verdict. The State appeals.

ASSIGNMENTS OF ERROR
The State claims that the district court erred in (1) overruling the State's motion for directed verdict and (2) overruling its motions for new trial and for judgment notwithstanding the verdict.

ANALYSIS

MOTION FOR DIRECTED VERDICT
The State claims that the district court erred in overruling its motion for directed verdict, because it was entitled to what it refers to as a "Faragher defense" to Lacey's sexual harassment claims. Brief for appellant at 9. We conclude that the Faragher defense does not apply and that the district court properly over-ruled the State's motion for directed verdict.
The Faragher defense is based on Faragher v. Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In Faragher, the plaintiff was a former lifeguard who worked for the marine safety section of the parks and recreation department of the city of Boca Raton, Florida. She brought a lawsuit under title VII of the Civil Rights Act of 1964 and alleged that two of her supervisors created a sexually hostile atmosphere by subjecting her and the other female lifeguards to uninvited and offensive touching and lewd remarks. There was evidence that other supervisors were aware of the inappropriate behavior and did nothing to stop the harassment and that the city failed to provide the marine safety section employees with copies of its sexual harassment policy. The plaintiff prevailed in district court, but the 11th Circuit Court of Appeals reversed.
*137 The U.S. Supreme Court granted certiorari and held that "an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of a plaintiff victim." Faragher, 524 U.S. at 780, 118 S.Ct. 2275. Therefore, an employer can avoid liability when a supervisor abuses his supervisory authority to engage in sexual harassment if the employer shows that (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher, supra. The employer must prove both prongs of the defense. An employer cannot raise a Faragher defense if the supervisor's harassment results in the discharge, demotion, or undesirable reassignment of the harassed employee. Id.
The U.S. Court of Appeals for the Eighth Circuit recently considered the Faragher defense in Weger v. City of Ladue, 500 F.3d 710 (8th Cir.2007). In Weger, a police captain commented on an officer's breast reduction surgery and subjected the officer to unwanted touching. The court found that the employer, a police department, acted reasonably to prevent and promptly correct sexually harassing behavior when it permanently reassigned the offending captain and the harassment stopped the day it was reported. The police department's actions were sufficient to satisfy the first prong of the Faragher defense. With regard to the second prong, the plaintiff knew that employees were to immediately report inappropriate behavior pursuant to the police department's antiharassment policy, yet she waited more than a year before reporting the harassment. This delay was unreasonable, and the city satisfied the second prong of the defense.
Assuming, but not deciding, that the State could raise such a defense in this case, we examine the record to determine if the State met both prongs of the defense. A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. Roth v. Wiese, 271 Neb. 750, 716 N.W.2d 419 (2006). The district court did not err in denying the directed verdict unless the only conclusion reasonable minds could reach from the evidence was (1) that the State exercised reasonable care to prevent and correct sexual harassment and (2) that Lacey unreasonably failed to take preventative or corrective opportunities provided by the State to avoid harm.
We cannot conclude, as a matter of law, that the State exercised reasonable care to prevent and correct the sexual harassment in this case. Drager frequently asked Lacey sexual questions. Other employees overheard the comments Drager made and agreed that the comments crossed the line of what was appropriate. Drager subjected Lacey to uninvited touching by leaning his chest against her back and putting his face next to her face when he talked to her and by running his fingers through her hair. He also threw candy and shot rubberbands at her chest area and constantly followed her around the ware-house. When the State finally investigated Drager's actions, his behavior was found to be inappropriate.
Ehlers was aware of Drager's inappropriate behavior toward Lacey before June 2004, but he failed to stop the harassment. When Lacey complained to Ehlers and filed the formal report with Lehmkuhl, *138 Ehlers verbally instructed Lacey to report to a different supervisor and told Drager to stay away from her. Unlike the solution undertaken by the police department in Weger v. City of Ladue, 500 F.3d 710 (8th Cir.2007), the State's only solution was to tell the parties to stay away from each other. Drager resumed harassing Lacey as soon as Ehlers was absent from the warehouse for a few days. Only after Drager threatened Lacey was he given a written warning and transferred to a different facility. This action was not taken until approximately 2 months after Lacey initially reported the harassment. Reasonable minds could differ as to whether these actions by the State rose to the level of "reasonable care to prevent and correct promptly any sexually harassing behavior," as required by the first prong of the Faragher defense. See Faragher v. Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).
We also conclude that the State did not establish as a matter of law that it met the second prong of the Faragher defense. Reasonable minds could differ regarding whether Lacey unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.
In Faragher, 524 U.S. at 808, 118 S.Ct. 2275, the U.S. Supreme Court noted that the lifeguards were isolated from the city's higher management and that the city had "entirely failed to disseminate its policy against sexual harassment among the beach employees" and failed to keep track of the conduct of the supervisors. Conversely, in Weger, the court found that the female officer unreasonably delayed reporting the sexual harassment when she did not report the harassment for over a year even though she was aware that an antiharassment policy was in place.
The record does not establish that Lacey knew how to properly report workplace harassment. Lehmkuhl noted that she did not think of giving Lacey a copy of the administrative regulations regarding workplace harassment because Lacey was a temporary employee. The State argues that it was unreasonable for Lacey to wait 6 months before filing a complaint. This argument is based on the assumption that Lacey had a copy of the State's sexual harassment policy. Considering that Lacey did not receive the policy, a reasonable jury could conclude that Lacey's failure to report the harassment before June 2004 was objectively reasonable.
Furthermore, the jury was instructed that if Lacey met her burden of proof, it must consider the State's defenses. Specifically, a portion of the second jury instruction states that
[i]n connection with the for[e]going defenses the burden of proof is on the [State] to prove, by the greater weight of the evidence, each and all of the following:
1. That the [State] took steps to prevent and correct promptly any harassing behavior;
2. That the steps [the State] took were reasonable;
3. That [Lacey] failed to timely complain of the sexual harassment; and
4. That [Lacey's] failure to do so was unreasonable.
This instruction incorporates the elements of the Faragher defense. As the jury awarded Lacey $60,000 for her sexual harassment claim, it clearly considered and rejected this defense.
Because reasonable minds could reach different conclusions as to whether the State took sufficient steps to prevent and promptly correct sexual harassment and whether Lacey unreasonably failed to timely report the harassment, a directed verdict in favor of the State was not appropriate and the district court did not err in failing to grant the State's motion.
*139 Next, the State alleges that it was entitled to a directed verdict on Lacey's retaliatory discharge and retaliatory failure to hire claims. The jury found for the State on both of these claims; therefore, the State cannot claim prejudice. Accordingly, this claim has no merit.

MOTIONS FOR NEW TRIAL AND FOR JUDGMENT NOTWITHSTANDING VERDICT
The State claims that the district court erred in failing to grant its motions for new trial and for judgment notwithstanding the verdict, because the jury's verdict was excessive and the result of passion and prejudice. These claims are also without merit.
On appeal, a motion for new trial is reviewed for abuse of discretion. See Poppe v. Siefker, 274 Neb. 1, 735 N.W.2d 784 (2007). A motion for judgment notwithstanding the verdict is appropriate only when the facts are such that reasonable minds can draw but one conclusion. See Frank v. Lockwood, 275 Neb. 735, 749 N.W.2d 443 (2008). Furthermore, a civil jury verdict will not be disturbed on appeal unless clearly wrong. Christian v. Smith, 276 Neb. 867, 759 N.W.2d 447 (2008).
"A verdict may be set aside as excessive only where it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or it is clear that the jury disregarded the evidence or controlling rules of law." Johnson v. Schrepf, 154 Neb. 317, 47 N.W.2d 853, 855 (1951) (syllabus of the court). It is well settled that "[t]he amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved." State ex rel. Stenberg v. Consumer's Choice Foods, 276 Neb. 481, 493, 755 N.W.2d 583, 593 (2008). Accord, Roth v. Wiese, 271 Neb. 750, 716 N.W.2d 419 (2006); Jones v. Meyer, 256 Neb. 947, 594 N.W.2d 610 (1999).
The jury awarded Lacey $0 for lost wages and benefits and $60,000 for other compensatory damages. As evidence of compensatory damages, Lacey testified that she suffered significant stress, had difficulty sleeping, and cried often. She also lost a significant amount of weight during the time she was employed at the warehouse, dropping from a size 12 to a size 1 or 2. Her physician placed her on antidepressant medication for stress; she had never taken antidepressants before that time.
Drager's harassment of Lacey continued for months. It ranged in frequency from two to three times per week to every day. Such harassment took its toll, causing Lacey depression and severe weight loss. She has more than adequately proved her mental and physical distress. Accordingly, the jury's verdict of $60,000 was not so clearly exorbitant as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded the evidence or rules of law. The district court did not abuse its discretion in denying the State's motions for new trial and for judgment notwithstanding the verdict.

CONCLUSION
The district court did not err in denying the State's motions for directed verdict, new trial, and judgment notwithstanding the verdict. We therefore affirm the judgment of the district court.
AFFIRMED.
MILLER-LERMAN, J., participating on briefs.